**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JEFFREY T. STRAUSS, derivatively on behalf of AFFILIATED COMPUTER SERVICES, INC., | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) ) | C.A. No. 06-318-SLR |
| JEFFREY A. RICH, MARK A. KING, and AFFILIATED COMPUTER SERVICES, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS JEFFREY A. RICH AND MARK A. KING'S
OPENING BRIEF IN SUPPORT
OF THEIR MOTION TO DISMISS**

Allen M. Terrell (No. 709)
*Terrell@rlf.com*
Gregory P. Williams (No. 2168)
*Williams@rlf.com*
Lisa Zwally Brown (No. 4328)
*LBrown@rlf.com*
Harry Tashjian, IV (No. 4609)
*Tashjian@rlf.com*
Richards, Layton and Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899-0551
(302) 651-7700
*Attorneys for Defendants Jeffrey A. Rich and Mark A. King*

Dated:  August 17, 2006

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ....................................................................1

SUMMARY OF ARGUMENT ....................................................................................................2

STATEMENT OF FACTS .............................................................................................................3

      A.     The Parties. ..............................................................................................................3

      B.     The Complaint. ........................................................................................................3

ARGUMENT .................................................................................................................................5

I.     THE COMPLAINT SHOULD BE DISMISSED AS TIME-BARRED.............................5

II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE
      TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. ...........................7

CONCLUSION ............................................................................................................................12

i

# TABLE OF AUTHORITIES

## CASES

*DiLorenzo v. Edgar*,
2004 WL 609374 (D. Del. Mar. 24, 2004) ...................................................................7

*Dreiling v. Am. Express Travel Related Serv. Co., Inc.*,
351 F. Supp. 2d 1077 (W.D. Wash. 2004) ..................................................................6

*Levy v. Sterling Holding Co., LLC*,
314 F.3d 106 (3d Cir. 2002)........................................................................................8

*Morse v. Lower Merion Sch. Dist.*,
132 F.3d 902 (3d Cir. 1997)........................................................................................7

*Papasan v. Allain*,
478 U.S. 265 (1986) ....................................................................................................8

*Pfizer Inc. v. Elan Pharmaceutical Research Corp.*,
812 F. Supp. 1352 (D. Del. 1993)...............................................................................3

*Segen v. Comvest Venture Partners, LP*,
2005 WL 1320875 (D. Del. June 2, 2005) ..............................................................5, 7

*Southmark Prime Plus, L.P. v. Falzone*,
776 F. Supp. 888 (D. Del. 1991).................................................................................5

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*,
140 F.3d 478 (3d Cir. 1998)........................................................................................7

## STATUTES

56 F.R. 7242.................................................................................................................10

60 F.R. 53832..........................................................................................................10, 11

15 U.S.C. § 78p(b) ................................................................................................5, 6, 8

17 C.F.R. § 240.16b-3 ...................................................................................................9

## NATURE AND STAGE OF THE PROCEEDINGS

On May 16, 2006, plaintiff Jeffrey T. Strauss ("Plaintiff" or "Strauss") filed a derivative complaint (the "Complaint") in this civil action (the "Action"), purportedly on behalf of Affiliated Computer Services, Inc. ("ACS" or the "Company"), alleging that defendants Jeffrey A. Rich ("Rich") and Mark A. King ("King") garnered short-swing profits in violation of Section 16(b) ("Section 16(b)") of the Securities Exchange Act of 1934, as amended (the "1934 Act").

Defendants King and Rich (collectively, the "Individual Defendants") hereby move to dismiss the Complaint as time-barred pursuant to the statute of limitations articulated in Section 16(b) and for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). The Individual Defendants are filing a motion to dismiss the Complaint (the "Motion") contemporaneously herewith. This is the Individual Defendants' opening brief in support of the Motion.

## SUMMARY OF ARGUMENT

This Action is one of five related lawsuits filed by stockholders of ACS challenging the issue of certain stock options to Rich and King, among others. In addition to this Action, an action is also pending in the Delaware Court of Chancery and three purported derivative actions are currently pending in Texas state courts.

The Complaint should be dismissed because: (1) Plaintiff's claims are time-barred under the applicable statute of limitations; and (2) Plaintiff has failed to state a claim under Rule 12(b)(6) because the challenged option grants are exempt from Section 16(b) liability. Accordingly, the Complaint should be dismissed in its entirety. The motion to dismiss for failure to make a demand on the Company will be addressed separately by counsel for ACS.

Plaintiff's claims are barred by the statute of limitations in Section 16(b). The allegations in the Complaint challenge stock option grants which took place four to six years ago (between 2000 and 2002). Plaintiff did not bring this action until four years after the last of the disputed option grants. Under Section 16(b) there is a two-year statute of limitations for actions containing allegations of short-swing profits. Therefore, Plaintiff should be time-barred from bringing the claims alleged in the Complaint.

Additionally, the Complaint should be dismissed under Rule 12(b)(6). The Securities and Exchange Commission ("SEC") employs Rules and Regulations under the Securities Exchange Act of 1934 (the "Rules and Regulations") which work in conjunction with the 1934 Act. One such rule, Rule 16b-3 ("SEC Rule 16b-3") governs exemptions to Section 16(b). Under SEC Rule 16b-3(d)(3), the stock options granted to the Individual Defendants are exempt from Section 16(b) because Rich and King held the options far longer than the six-month period required by the rule.

## STATEMENT OF FACTS[1]

### A.    The Parties.

Plaintiff Strauss is a resident of New York and purportedly owns Class A common stock of ACS. (Cmplt. ¶ 1).

Defendant Rich is the former Chief Executive Officer ("CEO") and a former director of ACS. (Cmplt. ¶ 3). Rich resigned from both the Company and the board of directors (the "Board") in September 2005. (*Id.*). Rich is alleged to have received a combined total of 500,000 options to purchase shares of ACS stock on July 11, 2000 and July 23, 2002. (Cmplt. ¶ 8).

Defendant King is the President and CEO of ACS. (Cmplt. ¶ 4). He is also a member of the ACS Board. (*Id.*). King is alleged to have received options to purchase 200,000 shares of ACS stock on July 23, 2002. (Cmplt. ¶ 8).

Defendant ACS is a Delaware corporation with its principal place of business in Dallas, Texas. (Cmplt. ¶ 2).

### B.    The Complaint.

The Complaint challenges three individual stock option grants which took place between July 11, 2000 and July 23, 2002. The recipients of these options were defendants Rich and King. Based upon a March 6, 2006 Form 8-K filed by ACS which stated that the SEC was investigating the Company's option grant practices from October 1998 through March 2005, Plaintiff alleges that the option grants awarded to Rich and King were improperly back-dated. (Cmplt. ¶ 8). The Complaint states that the stock option grants were back-dated to take advantage of historically low trading prices. (*Id.*).

---

[1] For purposes of this Motion only, the well-pleaded allegations of fact contained in the Complaint have been taken to be true. Documents incorporated by reference into the Complaint may be properly considered on a motion to dismiss. *See Pfizer Inc. v. Elan Pharmaceutical Research Corp.*, 812 F. Supp. 1352, 1357 (D. Del. 1993).

The Complaint further alleges that Rich and King sold certain shares of ACS stock within six months of receiving the allegedly back-dated option grants. (Cmplt. ¶ 10). Therefore, Plaintiff claims that Rich and King received "short-swing profits" in violation of Section 16(b). (*Id.*). Plaintiff admits that Rich and King reported the option grants in Forms 4 and 5 filed with the SEC. (Cmplt. ¶ 11).

The Complaint contains only one count: that Rich and King received short-swing profits in excess of $6 million and $1 million respectively in violation of Section 16(b) as a result of their alleged purchase and sale of options within a six-month period. (Cmplt. ¶¶ 14-16). Plaintiff seeks disgorgement of any profits received from the allegedly back-dated stock options. (Cmplt. ¶ 16).

# ARGUMENT

## I.    THE COMPLAINT SHOULD BE DISMISSED AS TIME-BARRED.

Plaintiff seeks disgorgement of the alleged "short-swing profits" received by the Individual Defendants in violation of Section 16(b).  However, Plaintiff's claims should be dismissed because the Complaint was filed well after the statute of limitations applicable to Section 16(b) had run.  Section 16(b) provides in pertinent part:

> Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought *more than two years* after the date such profit was realized.

15 U.S.C. § 78p(b) (emphasis added); *see also Segen v. Comvest Venture Partners, LP*, 2005 WL 1320875, at *3 (D. Del. June 2, 2005)[2] ("The statute of limitations for a § 16(b) claim runs for two years from the date of the transaction that led to the profits until the filing of the complaint.").

The Complaint alleges that the option grants made to Rich and King in 2000 and 2002 were improperly back-dated.  (Cmplt. ¶ 8).  Specifically, Plaintiff claims that the options to purchase 100,000 shares granted to Rich on July 11, 2000[3] were back-dated and the options to

---

[2] Unreported opinions cited within are attached alphabetically hereto at Ex. E.

[3] The October 21, 2002 Form 4 filed by Rich indicates that he received options for 200,000 shares, not 100,000 shares, on July 11, 2002.  (*See* October 21, 2002 Rich Form 4, attached hereto at Ex. A).  Interestingly, it was King who was granted options to purchase 100,000 shares of stock on July 11, 2000, yet Plaintiff does not take issue with this grant.  (*See* November 7, 2002 King Form 4, attached hereto at Ex. B).  The court may take judicial notice of Form 4 filings with the SEC.  *See* F.R. of Evid. 201(f) (stating that courts may take judicial notice at any stage of the proceeding); *Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 891-92 (D. Del. 1991) (finding that the court could take judicial notice of contents of court records from another jurisdiction and SEC filings).

purchase 400,000 shares and 200,000 to Rich and King respectively on July 23, 2002 were "improperly backdated to improperly take advantage of historically low trading prices of the Company's stock." (*Id.*). However, the date of the stock option does not trigger the statute of limitations. Rather, the two-year statute of limitations is effective "as of the date such profit was realized." 15 U.S.C. § 78p(b).

Plaintiff alleges that Rich sold 100,000 shares "within the six-month statutory period of the July 2000 option grant … garnering short-swing profits of at least $3 million," and that Rich sold 208,000 shares "between January 29, 2002 and January 21, 2003 … garnering short-swing profits of at least $3 million." (Cmplt. ¶ 10). Similarly, King allegedly sold 72,000 shares "between May 21, 2002 and January 22, 2003 … garnering short-swing profits of at least $1.1 million." (*Id.*). Plaintiff thus admits that the alleged profits were realized as of January 2003 at the latest. Therefore, even assuming that the Individual Defendants bought and sold shares in the time period suggested by Plaintiff, any claims arising from this alleged receipt and sale of shares would have accrued as of January 2005, and as early as January 2003 for the July 11, 2000 option grant (giving Plaintiff the benefit of the doubt and assuming the sale of shares by January 2001, the end of the six-month period from July 11, 2000). The Complaint was filed on May 16, 2006, long after the statute of limitations had run. Plaintiff has not alleged any facts, conclusory or otherwise, as to why the statute should be tolled.

There is law, however, to suggest that the statute of limitations for Section 16(b) claims begins to run upon notice of the challenged transaction. *See Dreiling v. Am. Express Travel Related Serv. Co., Inc.*, 351 F. Supp. 2d 1077, 1082 (W.D. Wash. 2004) ("The two-year period for Section 16(b) begins to run when the transactions are disclosed in the insider's Section 16(a) report.") (quoting *Whittaker v. Whittaker Corp.*, 639 F.2d 516, 530 (9th Cir. 1981)), *overruled on*

6

*other grounds*, 2006 WL 2337451 (9th Cir. Aug. 14, 2006)); *Segen*, 2005 WL 1320875. In *Segen*, the Court held that the statute of limitations under Section 16(b) was tolled because no SEC Form 4 was filed and therefore plaintiff had no actual notice that there was an option purchase and exchange in violation of Section 16(b). The Court found that the plaintiff had "sufficiently alleged that he lacked adequate notice of Defendants' wrongful conduct to support an equitable tolling claim" and declined to dismiss the complaint on that issue. *Id.* at *4. However, in this case, Plaintiff does not, and indeed can not, make an argument as to the tolling of the statute based on actual notice of the alleged wrongdoing. Plaintiff admits that the challenged option grants were reported in Form 4 and Form 5 filings made by Rich and King with the SEC. (Cmplt. ¶ 11). In fact, Plaintiff also admits that it may have a statute of limitations problem. (Cmplt. ¶ 17 ("prompt action is required to avoid a possible bar to the claims asserted herein under the governing two year statute of limitations")). Therefore, Plaintiff's Complaint should be dismissed as time-barred.

## II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Should the Court determine that this Action is not barred by the statute of limitations, this case nonetheless should be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). In evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept as true all well-pleaded allegations of the complaint, and construe them in the light most favorable to the plaintiff. *See DiLorenzo v. Edgar*, 2004 WL 609374, at *2 (D. Del. Mar. 24, 2004); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). However, the Court is not required to accept unsupported legal conclusions, even if cast in the form of factual allegations. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 & n.8 (3d Cir. 1997) ("Conclusory allegations or legal conclusions

7

masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (citation omitted); *accord Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.").

The Complaint fails to state a claim for violation of Section 16(b) because the Individual Defendants are exempt under SEC Rule 16-b(3)(d). Section 16(b) provides in pertinent part:

> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) ... involving any such equity security within any period of less than six months, unless such security ... was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security ... purchased or of not repurchasing the security ... sold for a period exceeding six months.

15 U.S.C. § 78p(b). Plaintiff alleges that in 2000 and 2002, the Individual Defendants "engaged in sales of the Company's stock at various times that occurred within six months of the improper Option Grants," and thus any profits obtained are subject to disgorgement under Section 16(b). (Cmplt. ¶ 9).

However, Section 16(b) also states: "[t]his subsection shall not be construed to cover ... any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection." 15 U.S.C. § 78p(b); *see also Levy v. Sterling Holding Co., LLC*, 314 F.3d 106, 111 (3d Cir. 2002) ("section 16(b) has its limits and not every transaction that could fall within the definition of 'purchase' or 'sale' is so treated by that section. Thus, the Exchange Act provides that the SEC may exempt certain transactions from the coverage of the statute."). SEC Rule 16b-3 sets out certain of the exemptions referred to in Section 16(b). SEC Rule 16b-3(a) states that "[a] transaction between the issuer ... and an

8

officer or director of the issuer that involves issuer equity securities shall be exempt from section 16(b) of the Act if the transaction satisfies the applicable conditions set forth in this section." 17 C.F.R. § 240.16b-3(a). SEC Rule 16b-3(d) articulates one such exemption and the corresponding eligibility requirements. SEC Rule 16b-3(d) provides:

> *Acquisitions from the Issuer.* Any transaction, other than a Discretionary Transaction, involving an acquisition from the issuer (including without limitation a grant or award), whether or not intended for a compensatory or other particular purpose, shall be exempt if:
>
> (1) The transaction is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors;
>
> (2) The transaction is approved or ratified, in compliance with section 14 of the Act, by either: the affirmative votes of the holders of a majority of the securities of the issuer present, or represented, and entitled to vote at a meeting duly held in accordance with the applicable laws of the state or other jurisdiction in which the issuer is incorporated; or the written consent of the holders of a majority of the securities of the issuer entitled to vote; provided that such ratification occurs no later than the date of the next annual meeting of shareholders; or
>
> (3) The issuer equity securities so acquired are held by the officer or director for a period of six months following the date of such acquisition, provided that this condition shall be satisfied with respect to a derivative security if at least six months elapse from the date of acquisition of the derivative security to the date of disposition of the derivative security (other than upon exercises or conversion) or its underlying equity security.

17 C.F.R. § 240.16b-3.

Plaintiff admits that the Individual Defendants reported the receipt of the challenged option grants in Form 4 and Form 5 filings with the SEC, in which the Individual Defendants asserted that the grants were exempt under SEC Rule 16b-3(d). (Cmplt. ¶ 11). However, Plaintiff claims that any exemption under SEC Rule 16b-3(d) is "unavailable" because the options were not "granted in accordance with the terms of the governing options plans and were

9

improperly backdated." (*Id.*). Plaintiff focuses solely on SEC Rule 16b-3(d)(1) and alleges that "[t]he Rule requires, *inter alia*, that the Board or a committee of non-employee directors of the Board approve the transaction in advance and in good faith, as a gate-keeper, with an eye toward preventing speculative abuse by its officers and directors." (Cmplt. ¶ 7). Therefore, Plaintiff claims the option grants are not exempt because they "were not properly approved by the Company's Compensation Committee." (Cmplt. ¶ 12).

Contrary to these allegations, the Individual Defendants are exempt from Section 16(b). Plaintiff ignores the word "or" in SEC Rule 16b-3(d) and fails to recognize that only one of the three conditions listed therein must be satisfied before the exemption applies. Assuming, *arguendo*, that Plaintiff is correct and the Compensation Committee did not properly approve the option grants, the Individual Defendants nevertheless may be exempt if they satisfy sections (d)(2) *or* (d)(3) of SEC Rule 16b-3.

The SEC made revisions to the Rules and Regulations in 1991. At that time, the six-month holding period now codified as an exemption under SEC Rule 16b-3(d)(3) was only one of several conditions that needed to be met before any exemption to Section 16(b) was available under SEC Rule 16b-3. *See* 56 F.R. 7242, 7254. However, the 1995 release proposing revisions to the Rules and Regulations, which included revisions to what is now SEC Rule 16b-3(d)(3), demonstrates that under the current rules, the six-month holding period is "an alternative basis for exempting a grant or award." 60 F.R. 53832, 53834. Indeed, Plaintiff is aware of the 1995 revisions to the Rules and Regulations and refers to them in the Complaint. (Cmplt. ¶ 7). However, while recognizing that the proposed revisions sought to balance the abuse of inside information with the impediment to officers and directors of participating in "legitimate compensatory transactions" (Cmplt. ¶ 7), Plaintiff fails to focus on the language contained in the

10

same section which states that there are "*three alternative bases* for exempting the grant or award

of issuer equity securities" and that the "six-month holding period exemption would be available

to exempt grants that, for reasons of timing or otherwise, *fail to satisfy any of the other*

*alternative conditions.*" 60 F.R. 53832, 53835, 53836 (emphasis added).

In this case, the options granted to the Individual Defendants are exempt under the

alternative available in SEC Rule 16b-3(d)(3). According to the Form 4 filed by King on May

20, 2003, he continued to hold the 200,000 shares he was granted on July 23, 2002 as of May

2003.[4]  (*See* May 20, 2003 King Form 4, attached hereto at Ex. C). Additionally, these shares

were not exercisable until July 23, 2007. (*Id*). Likewise, Rich filed a Form 4 on May 28, 2003.

The Form 4 demonstrates that Rich continued to hold both the options granted on July 11, 2000,

which were not exercisable until July 11, 2005, and the options granted on July 23, 2002, which

were not exercisable until July 23, 2007, as of May 2003, past the six-month required period for

the 2002 option grant and years past the six-month period for the 2000 option grant. (*See* May

28, 2003 Rich Form 4, attached hereto at Ex. D). Because the May 2003 Form 4 filings of both

King and Rich demonstrate that they continued to hold all of the challenged options, all of which

were unexercised, SEC Rule 16b-3(d)(3) should apply to and exempt all of the challenged

options. The options themselves were not traded and Defendants could not exercise the options

to trade their underlying securities during the first six months following their grant. Therefore,

SEC Rule 16b-3(d)(3) shelters the options from Section 16(b) liability. Plaintiff has failed to

state a claim upon which relief can be granted and the Complaint should be dismissed pursuant

to Rule 12(b)(6).

---

[4] The May 2003 Form 4 was used for both King and Rich as this filing was made well after the six-month holding period required under SEC Rule 16b-3(d)(3) for the most recent challenged option grant, the July 2002 grant.

## CONCLUSION

For the foregoing reasons, the Individual Defendants respectfully request that the Court

dismiss the Complaint with prejudice as time-barred and for failure to state a claim pursuant to

Rule 12(b)(6).


_Lisa Zwally Brown_

Allen M. Terrell (No. 709)
*Terrell@rlf.com*
Gregory P. Williams (No. 2168)
*Williams@rlf.com*
Lisa Zwally Brown (No. 4328)
*LBrown@rlf.com*
Harry Tashjian, IV (No. 4609)
*Tashjian@rlf.com*
Richards, Layton and Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899-0551
(302) 651-7700
*Attorneys for Defendants Jeffrey A. Rich and Mark A. King*

Dated:  August 17, 2006

12

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2006, I caused the foregoing to be electronically filed with the Clerk of Court using CM/ECF which will send notification of such filing and by hand delivery to the following:

Theodore J. Tacconelli, Esquire
Ferry, Joseph & Pearce, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
(302) 575-1555
ttacconelli@ferryjoseph.com

Lisa Zwally Brown (#4328)

EXHIBIT A

4 1 edgar.htm 4

**FORM 4**

.. Check this box if no longer
subject to Section 16. Form 4 or
Form 5 obligations may continue
See Instruction 1(b)

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Pub
Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 194

| 1  Name and Address of Reporting Person* | 2  Issuer Name **and** Ticker or Trading Symbol **Affiliated Computer Services, Inc. ("ACS")** | | 6  Relationship of Repo to Issuer (Check all app **X** Director |
|---|---|---|---|
| Rich, Jeffrey A. | | | **X** Officer (give title be |
| (Last)     (First)     (Middle) | 3  I R S  Identification Number of Reporting Person, if an entity (voluntary) | 4  Statement for Month/Day/Year **October 21, 2002** | **Chief Executive Offic** |
| 2828 N. Haskell Ave., Bldg. 1, 10th Floor | | | |
| (Street) | | 5  If Amendment, Date of Original (Month/Day/Year) | 7  Individual or Joint/G **X** Form filed by One R .. Form filed by More |
| Dallas, TX 75204 | | | |

| (City)     (State)     (Zip) | Table I — Non-Derivative Securities Acquired, Disposed o | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 Title of Security (Instr. 3) | 2. Trans- action Date (Month/ Day/ Year) | 2A. Deemed Execution Date, if any (Month/Day/ Year) | 3. Trans- action Code (Instr. 8) | | 4  Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 & 5) | | | 5 Amount of Securities Beneficially Owned Follow- ing Reported Transactions(s) (Instr. 3 & 4) |
| | | | Code | V | Amount | (A) or (D) | Price | |
| Class A Common Stock par value $0.01 | 10/21/02 | 10/21/02 | M | | 16,000 | A | $8.4375 | |
| Class A Common Stock par value $0.01 | 10/21/02 | 10/21/02 | S | | 16,000 | D | $45.00 | |
| Class A Common Stock par value $0.01 | | | | | | | | |
| Class A Common Stock par value $0.01 | | | | | | | | |
| Class A Common Stock par value $0.01 | | | | | | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, see Instruction 4(b)(v)

**Persons who respond to the collection of information contained in this form are not required to respond unless the for control number**

**FORM 4 (continued)**     **Table II - Derivative Securities Acquired, Disposed of, or Benefic (e.g., puts, calls, warrants, options, convertible securities)**

| 1. Title of Derivative Security (Instr. 3) | 2. Conver- sion or Exercise Price of Derivative Security | 3. Trans- action Date (Month/ Day/ | 3A. Deemed Execution Date, if any (Month/ | 4 Trans- action Code (Instr | 5 Number of Derivative Securities Acquired (A) or Disposed of (D) | 6. Date Exercisable and Expiration Date (Month/Day/ Year) | 7. Title and Amount of Underlying Securities (Instr. 3 & 4) | 8. Price Derivati Security (Instr. 5) |
|---|---|---|---|---|---|---|---|---|

| | Year) | Day/Year) | 8) | Code | V | (Instr 3, 4 & 5) (A) | (D) | Date Exer-cisable | Expira-tion Date | Title | Amount or Number of Shares | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Employee Stock Option (Right to Buy) | $35.75 | 07/23/02 | | A | | 400,000 | | 07/23/07 | 07/23/12 | Class A Common | 400,000 | |
| Employee Stock Option (Right to Buy) | $16.4375 | 07/11/00 | | A | | 200,000 | | 07/11/05 | 07/11/10 | Class A Common | 200,000 | |
| Employee Stock Option (Right to Buy) | $11.53125 | 10/08/98 | | A | | 500,000 | | 10/08/03 | 10/08/08 | Class A Common | 500,000 | |
| Employee Stock Option (Right to Buy) | $10.5625 | 04/07/97 | | A | | 120,000 | | 04/07/02 | 04/07/07 | Class A Common | 120,000 | |
| Employee Stock Option (Right to Buy) | $16.875 | 03/08/96 | | A | | 200,000 | | 03/08/01 | 03/08/06 | Class A Common | 200,000 | |
| Employee Stock Option (Right to Buy) | $16.875 | 09/18/01 | | M | | | 1,950 | 03/08/01 | 03/08/06 | Class A Common | 1,950 | |
| Employee Stock Option (Right to Buy) | $16.875 | 09/25/01 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |
| Employee Stock Option (Right to Buy) | $16.875 | 10/02/01 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |
| Employee Stock Option (Right to Buy) | $16.875 | 10/09/01 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |
| Employee Stock Option (Right to Buy) | $16.875 | 10/16/01 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |
| Employee Stock Option | $16.875 | 10/23/01 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| (Right to Buy) | | | | | | | | | | | |
| Employee Stock Option (Right to Buy) | $16.875 | 10/30/01 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |
| Employee Stock Option (Right to Buy) | $16.875 | 11/05/01 | | M | | | 50,000 | 03/08/01 | 03/08/06 | Class A Common | 50,000 | |
| Employee Stock Option (Right to Buy) | $16.875 | 11/06/01 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |
| Employee Stock Option (Right to Buy) | $16.875 | 11/13/01 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |
| Employee Stock Option (Right to Buy) | $16.875 | 11/20/01 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |
| Employee Stock Option (Right to Buy) | $16.875 | 11/27/01 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |
| Employee Stock Option (Right to Buy) | $16.875 | 12/04/01 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |
| Employee Stock Option (Right to Buy) | $16.875 | 12/11/01 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |
| Employee Stock Option (Right to Buy) | $16.875 | 12/18/01 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |
| Employee Stock Option (Right to Buy) | $16.875 | 12/26/01 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |
| Employee Stock Option (Right to Buy) | $16.875 | 01/02/02 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |
| Employee Stock | $16.875 | 01/08/02 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Option (Right to Buy) | | | | | | | | | | |
| Employee Stock Option (Right to Buy) | $16.875 | 01/16/02 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 |
| Employee Stock Option (Right to Buy) | $16.875 | 01/22/02 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 |
| Employee Stock Option (Right to Buy) | $16.875 | 01/29/02 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 |
| Employee Stock Option (Right to Buy) | $16.875 | 02/05/02 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 |
| Employee Stock Option (Right to Buy) | $16.875 | 02/12/02 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 |
| Employee Stock Option (Right to Buy) | $16.875 | 02/19/02 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 |
| Employee Stock Option (Right to Buy) | $8.4375[1] | 02/26/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 |
| Employee Stock Option (Right to Buy) | $8.4375 | 03/05/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 |
| Employee Stock Option (Right to Buy) | $8.4375 | 03/12/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 |
| Employee Stock Option (Right to Buy) | $8.4375 | 03/19/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 |
| Employee Stock Option (Right to Buy) | $8.4375 | 03/26/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 |
| Employee | $8.4375 | 04/02/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A | 4,000 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Stock Option (Right to Buy) | | | | | | | | | Common | |
| Employee Stock Option (Right to Buy) | $8.4375 | 04/09/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 04/16/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 04/23/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 04/30/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 05/07/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 05/14/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 05/21/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 05/28/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 06/04/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 06/11/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 06/18/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |

| Employee Stock Option (Right to Buy) | $8.4375 | 06/25/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Employee Stock Option (Right to Buy) | $8.4375 | 07/03/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 07/09/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 07/17/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 07/31/02 | | M | | | 8,000 | 03/08/01 | 03/08/06 | Class A Common | 8,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 08/06/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 08/13/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 08/20/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 08/27/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 09/04/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 09/10/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 09/17/02 | | M | | | 4,000 | 03/08/01 | 03/08/06 | Class A Common | 4,000 | |

| Employee Stock Option (Right to Buy) | $8.4375 | 10/21/02 | | M | | | | 16,000 | 03/08/01 | 03/08/06 | Class A Common | 16,000 | |

Explanation of Responses:

(1) Options previously reported from 02/26/02 forward have been adjusted for a 2-for-1 stock split implemented as a stock div
shareholders of record at the close of business on February 15, 2002.

By: /s/ **Jeffrey A. Rich**

**Signature of Reporting Person

**Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed
If space is insufficient, See Instruction 6 for procedure

Persons who respond to the collection of information contained in this form are not required to respond unless the form displa

EXHIBIT B

4 1 edgar.htm 4

**FORM 4**

__ Check this box if no longer
subject to Section 16. Form 4 or
Form 5 obligations may continue
See Instruction 1(b)

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Pu
Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 19

| 1 Name and Address of Reporting Person*<br><br>King, Mark A.<br>(Last)    (First)    (Middle)<br><br>2828 N. Haskell Avenue, Bldg. 1, 10th Floor<br>(Street)<br><br>Dallas, TX 75204<br>(City)    (State)    (Zip) | 2 Issuer Name **and** Ticker or Trading Symbol<br>**Affiliated Computer Services, Inc. ("ACS")** | | 6 Relationship of Re to Issuer (Check all a X Director<br>X Officer (give title b |
|---|---|---|---|
| | 3 I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | 4 Statement for Month/Day/Year<br>11/07/02 | **President and Chief** |
| | | 5 If Amendment, Date of Original (Month/Day/Year) | 7 Individual or Joint/<br>X Form filed by One<br>_ Form filed by Mor |

**Table I — Non-Derivative Securities Acquired, Disposed**

| 1 Title of Security (Instr. 3) | 2. Trans-action Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Trans-action Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 & 5) | | | 5. Amount of Securities Beneficially Owned Follow-ing Reported Transactions(s) (Instr. 3 & 4) |
|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | |
| Class A Common Stock, par value $0.01 | 11/07/02 | 11/07/02 | M | | 26,000 | A | $8.4375 | |
| Class A Common Stock, par value $0.01 | 11/07/02 | 11/07/02 | S | | 26,000 | D | $50.00 | |
| Class A Common Stock, par value $0.01 | | | | | | | | |
| Class A Common Stock, par value $0.01 | | | | | | | | |
| Class A Common Stock, par value $0.01 | | | | | | | | |
| Class A Common Stock, par value $0.01 | | | | | | | | |
| Class A Common Stock, par value $0.01 | | | | | | | | |
| Class A Common Stock, par value $0.01 | | | | | | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, see Instruction 4(b)(v)

**Persons who respond to the collection of information contained in this form are not required to respond unless the for control number**

**FORM 4 (continued)**        **Table II - Derivative Securities Acquired, Disposed of, or Benefic**

**(e.g., puts, calls, warrants, options, convertible securities)**

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 & 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 & 4) | | 8. Price of Derivative Security (Instr. 5) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | |
| Employee Stock Option (Right to Buy) | $35.75 | 07/23/02 | | A | | 200,000 | | 07/23/07 | 07/23/12 | Class A Common | 200,000 | |
| Employee Stock Option (Right to Buy) | $29.525 | 03/21/01 | | A | | 200,000 | | 03/21/06 | 03/21/11 | Class A Common | 200,000 | |
| Employee Stock Option (Right to Buy) | $16.4375 | 07/11/00 | | A | | 100,000 | | 07/11/05 | 07/11/10 | Class A Common | 100,000 | |
| Employee Stock Option (Right to Buy) | $19.50 | 09/13/99 | | A | | 100,000 | | 09/13/04 | 09/13/09 | Class A Common | 100,000 | |
| Employee Stock Option (Right to Buy) | $11.53125 | 10/08/98 | | A | | 100,000 | | 10/08/03 | 10/08/08 | Class A Common | 100,000 | |
| Employee Stock Option (Right to Buy) | $15.9375 | 05/18/98 | | A | | 80,000 | | 05/18/03 | 05/18/08 | Class A Common | 80,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 03/08/96 | | A | | 160,000 | | 03/08/01 | 03/08/06 | Class A Common | 160,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 05/21/02 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 05/29/02 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |

| Employee Stock Option (Right to Buy) | $8.4375 | 06/04/02 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 06/11/02 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 06/18/02 | | M | | | 2,000 | 03/08/01 | 03/08/06 | Class A Common | 2,000 | |
| Employee Stock Option (Right to Buy) | $8.4375 | 11/07/02 | | M | | | 26,000 | 03/08/01 | 03/08/06 | Class A Common | 26,000 | |

Explanation of Responses:

By: /s/ **Mark A. King**

**Signature of Reporting Person

**Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed.
     If space is insufficient, See Instruction 6 for procedure.

Persons who respond to the collection of information contained in this form are not required to respond unless the form displa

EXHIBIT C

SEC FORM 4

SEC Form 4

# FORM 4

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

☐

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | January 31, 2008 |
| Estimated average burden hours per response | 0.5 |

| 1. Name and Address of Reporting Person* | | |
|---|---|---|
| KING MARK A | | |
| (Last) | (First) | (Middle) |
| (Street) | | |
| (City) | (State) | (Zip) |

| 2. Issuer Name and Ticker or Trading Symbol |
|---|
| AFFILIATED COMPUTER SERVICES INC [ ACS ] |

| 3. Date of Earliest Transaction (Month/Year) |
|---|
| 05/20/2003 |

| 4. If Amendment, Date of Original Filed (Month/Day/Year) |
|---|
| |

| 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) | |
|---|---|
| X Director | 10% Owner |
| X Officer (give title below) | Other (specify below) |
| President and COO | |

| 6. Individual or Joint/Group Filing (Check Applicable Line) |
|---|
| X Form filed by One Reporting Person |
| Form filed by More than One Reporting Person |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Class A Common Stock par value $0.01 | 05/20/2003 | 05/20/2003 | M | | 1000 | A | 8.4375 | 78624 | D | |
| Class A Common Stock par value $0.01 | 05/20/2003 | 05/20/2003 | S | | 1000 | D | 50 | 77624 | D(1) | |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

SEC FORM 4

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Employee Stock Option (Right to Buy) | 8.4375 | 05/20/2003 | | M | | | 1000 | 03/08/2001 | 03/08/2006 | Class A Common | 1000 | $50 | 55000 | D [2] | |

**Explanation of Responses:**

1. Indirectly held ownership includes: (i) 4,000 shares of Class A Common Stock par value $0.01 in an IRA; (ii) 1,996 shares of Class A Common Stock par value $0.01 in the 401k Plan; (iii) 5,986 shares of Class A Common Stock par value $0.01 in the Employee Stock Purchase Plan; (iv) 9,378 shares of Class A Common Stock par value $0.01 held by his spouse; and (v) 2,000 of Class A Common Stock par value $0.01 held in his spouse's IRA.

2. See Attachment of Beneficially Owned Securities (Directly Owned) for Table II.

Mark A. King                                          05/20/2003

** Signature of Reporting Person                    Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4 (b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

```
<DOCUMENT>
<TYPE>EX-99
<SEQUENCE>3
<FILENAME>king_attach1.txt
<DESCRIPTION>ATTACHMENT OF BENEFICIALLY OWNED SECURITIES
<TEXT>
```

Attachment of Beneficially Owned Securities (Directly Owned)
Other Than Transaction Being Reported on Table II

Grant of Employee Stock Option (Right to Buy) on 07232002 for 200000 shares
of ACS Class A Common Stock at an Exercise Price of $35.75 exercisable
on 07232007 expiring on 07232012

Grant of Employee Stock Option (Right to Buy) on 03212001 for 200000 shares
of ACS Class A Common Stock at an Exercise Price of $29.525 exercisable
on 03212006 expiring on 03212011

Grant of Employee Stock Option (Right to Buy) on 07112000 for 100000 shares
of ACS Class A Common Stock at an Exercise Price of $16.4375 exercisable
on 07112005 expiring on 07112010

Grant of Employee Stock Option (Right to Buy) on 09131999 for 100000 shares
of ACS Class A Common Stock at an Exercise Price of $19.50 exercisable
on 09132004 expiring on 09132009

Grant of Employee Stock Option (Right to Buy) on 10081998 for 100000 shares
of ACS Class A Common Stock at an Exercise Price of $11.53125 exercisable
on 10082003 expiring on 10082008

Grant of Employee Stock Option (Right to Buy) on 05181998 for 80000 shares
of ACS Class A Common Stock at an Exercise Price of $15.9375 exercisable
on 05182003 expiring on 05182008

Grant of Employee Stock Option (Right to Buy) on 03081996 for 160000 shares
of ACS Class A Common Stock at an Exercise Price of $8.4375 exercisable
on 03082001 expiring on 03082006. Including the reported transaction, 105000
shares have been exercised and 55000 shares remain to be exercised

```
</TEXT>
</DOCUMENT>
```

EXHIBIT D

http://www.sec.gov/Archives/edgar/data/21350001183592030000023xslF145X0l/edgar.xml (1 of 2)7/10/2006 5:04:16 PM

SEC FORM 4
SFC Form 4

# FORM 4

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | January 31, 2008 |
| Estimated average burden hours per response | 0.5 |

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) | |
|---|---|---|---|
| RICH JEFFREY A | AFFILIATED COMPUTER SERVICES INC [ ACS ] | X Director | 10% Owner |
| (Last) (First) (Middle) | 3. Date of Earliest Transaction (Month/Day/Year) 05/28/2003 | X Officer (give title below) | Other (specify below) |
| (Street) | 4. If Amendment, Date of Original Filed (Month/Day/Year) | Chief Executive Officer | |
| (City) (State) (Zip) | | 6. Individual or Joint/Group Filing (Check Applicable Line) X Form filed by One Reporting Person Form filed by More than One Reporting Person | |

Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Class A Common Stock par value $0.01 | 05/28/2003 | 05/28/2003 | S | | 4000 | D | 10.5625 | 86972 | D | |
| Class A Common Stock par value $0.01 | 05/28/2003 | 05/28/2003 | M | | 2000 | A | 47 | 84972 ' ' ' | D | |

Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

SEC FORM 4

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction (s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Employee Stock Option (Right to Buy) | 10.5625 | 05/28/2003 | | M | | | 4000 | | 04/07/2002 | 04/07/2007 | Class A Common | 4000 | $47 | 64100 | D | (²) |

**Explanation of Responses:**

1. Indirectly held ownership includes 306 shares of Class A Common Stock in the 401(k)Plan and 992 shares of Class A Common Stock in the Employee Stock Purchase Plan.

2. Beneficially Owned Securities (Directly Owned) for Table II: (i) Grant of Employee Stock Option (Right to Buy) on 07/23/2002 for 400,000 shares of ACS Class A Common Stock at an Exercise Price of $16.4375 exercisable on 07/23/2007, expiring on 07/23/2012; (ii) Grant of Employee Stock Option (Right to Buy) on 07/11/2000 for 200,000 shares of ACS Class A Common Stock at an Exercise Price of $11.53125 exercisable on 07/11/2005, expiring on 07/11/2010; (iii) Grant of Employee Stock Option (Right to Buy) on 10/08/1998 for 300,000 shares of ACS Class A Common Stock at an Exercise Price of $11.53125 exercisable on 10/08/2003, expiring on 10/08/2008; (iv) Grant of Employee Stock Option (Right to Buy) on 04/07/1997 for 120,000 shares of ACS Class A Common Stock at an Exercise Price of $10.5625 exercisable on 04/07/2002, expiring on 04/07/2007. Including the reported transaction, 53,900 shares have been exercised and 64,100 shares remain to be exercised with respect to this option.

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4 (b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

Jeffrey A. Rich

** Signature of Reporting Person

05/28/2003

Date

EXHIBIT E

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 609374 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Stephen J. DILORENZO, derivatively on behalf of
dELiA*S Corp. and Alloy, Inc., Plaintiff,
v.
Christopher EDGAR, Geraldine Karestky, Stephen
J. Kahn, Evan Guillemin, dELiA*S Corp., and
Alloy, Inc., Defendants.
**No. Civ. 03-841-SLR.**

March 24, 2004.

Theodore J. Tacconelli, Ferry, Joseph & Pearce,
P.A., Wilmington, DE, for Plaintiff.
Allen M. Terrell, Jr., Richards, Layton & Finger,
Jon E. Abramczyk, Morris, Nichols, Arsht &
Tunnell, Wilmington, DE, for Defendants.

MEMORANDUM ORDER
ROBINSON, J.
*1 At Wilmington, this 24th day of March, 2004,
having reviewed the motions of defendants to
dismiss (D.I.10, 13), and the memoranda submitted
therewith;

IT IS ORDERED that defendants' motions (D.I.10,
13) to dismiss are denied for the reasons that follow:

1. Plaintiff filed this derivative action on August 27,
2003 alleging violations of § 16(b) of the Securities
Exchange Act of 1934, codified at 15 U.S.C. §
78p(b). (D.I.1) The suit is brought on behalf of
dELiA*s Corporation ("dELiA*s") and Alloy, Inc. (
"Alloy"), and seeks to recover short-swing profits
obtained by defendants Christopher Edgar,
Geraldine Karestky, Stephen Kahn and Evan
Guillemin ("Former Director defendants"). On
October 16, 2003, the defendants filed motions to
dismiss pursuant to Fed.R.Civ.P. 12(b) 1 and
12(b)(6). (D.I.10, 13)

2. During the relevant time period, the Former
Director defendants were directors of dELiA*s.
Kahn was the Chief Executive Officer and
Chairman of the Board. Edgar was the Executive
Vice President and Vice Chairman. Guillemin was
the Chief Financial Officer and Treasurer. On or
about May 12, 2003, the Former Director
defendants purchased in aggregate 7,297,298 shares
of dELiA*s common stock at a price of $0.37 per
share for a total of $2.7 million. (D.I.1, ¶ 12) Of
this amount Kahn purchased 4,054,054 shares;
Karetsky purchased 2,702,703 shares; Edgar
purchased 337,838 shares; and Guillemin purchased
202,703 shares. Further, dELiA*s issued to the
Former Director defendants a total of 600,000
warrants to purchase shares at $0.37 a share.

3. On July 30, 2003, dELiA*s entered into an
agreement with Alloy to conduct a tender offer for
all of the publicly held shares of dELiA*s. At that
time, Karetsky and Kahn entered into an agreement
to support the merger and tender their shares. Kahn,
Edgar and Guillemin each received employment
agreements with Alloy upon the effective date of the
merger. (Id., ¶ 10, 15)

4. On August 6, 2003, Dodger Acquisition Corp., a
direct wholly owned subsidiary of Canal Park Trust
and an indirect wholly owned subsidiary of Alloy,
commenced a tender offer for 100% of dELiA*s
shares at a price of $0.0928 per share. (Id., ¶ 25;
D.I. 12, at ex. 1) Plaintiff contends that the Former
Director defendants obtained short-swing profits in
violation of § 16(b) as a result of an August 6, 2003
tender-offer by Alloy to dELiA*s shareholders for a
cash-out merger between the corporations.

5. During the offer period, plaintiff commenced the
present action but did not tender his shares. On
September 7, 2003, the merger closed and plaintiff,
along with other nontendering shareholders, was
cashed-out and his shares canceled. Canal Park
Trust is now the sole shareholder of dELiA*s stock.
(D.I.12)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 2

Not Reported in F.Supp.2d, 2004 WL 609374 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

6. Plaintiff was a dELiA*s shareholder at the time of the filing of the complaint. Plaintiff also contends that at the time of the transaction he was an Alloy shareholder and has maintained that interest. Plaintiff seeks a disgorgement of $4,071,892 in profits received by the Former Director defendants as a result of the transaction. Plaintiff also seeks $334,800 related to the acquisition of the 600,000 warrants.

*2 7. Defendants' motions to dismiss contend that plaintiff's complaint fails for a lack of standing because he is no longer a shareholder of dELiA*s and because he failed to make demand upon the corporation's board of directors.

8. Standard of Review. In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991).

9. In considering a motion to dismiss, a court may consider Securities Exchange Commission documents that are expressly relied upon in the complaint. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997); *Indeck Maine Energy, L.L.C. v. ISO New England Inc.,* 167 F.Supp.2d 675 (D.Del.2001). Further, on a motion to dismiss the court may take judicial notice of the contents of documents required by law to be filed, and actually filed, with federal or state officials. *See Oran v. Stafford,* 226 F.3d 275, 289 (3d Cir.2000); *Ieradi v. Myland Lab, Inc.,* 230 F.3d

594, 600 n. 3 (3d Cir.2000) (citing Fed.R.Evid. 201 ).

10. Standing under Section 16(b). Section 16(b) establishes strict liability for covered individuals who engage in the sale or purchase of a covered security. 15 U.S.C. § 78p(b). The right of recovery under § 16(b) is held, however, solely by the issuer of the security. *Id.* A shareholder may bring a derivative action "in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter." *Id.*

11. There are three requirements for shareholder standing to bring suit under § 16(b). *See Gollust v. Mendell,* 501 U.S. 116 (1991). First, the plaintiff must own a security within the meaning of the section. Second, the security held by the plaintiff must be a security of the issuer of the security traded by the covered individual. Third, the plaintiff must own a security of the issuer at the time the § 16(b) action is instituted. *Id.* at 123-24. Unlike a typical shareholder derivative action, there is not a requirement that the plaintiff maintain continual ownership, only that he has "some continuing financial stake in the litigation" so as to satisfy minimum standing requirements imposed by the jurisdictional limitations of Article III. *See id.* at 125.

*3 12. In the present case, plaintiff's complaint alleges that he owned shares of stock issued by dELiA*s at the time he filed the present action. Consequently, plaintiff satisfied the statutory requirements for standing at the time the suit was instituted. Defendants contend, however, that plaintiff is no longer a shareholder and lacks the requisite standing to maintain the suit. Plaintiff argues that his ownership of shares in Alloy provide a basis for his continuing financial interest in the outcome of the litigation.

13. In *Gollust,* the Supreme Court considered the effect of a stock-exchange merger upon the plaintiff's previously filed § 16(b) action. The unanimous Court concluded that although plaintiff was no longer a shareholder of the issuer, as his stock was exchanged for stock in the new

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F Supp 2d, 2004 WL 609374 (D Del )
(Cite as: Not Reported in F.Supp.2d)

corporation, he nonetheless had the minimal financial interest in the outcome of the litigation to satisfy constitutional concerns. *Id.* at 126-28. Consequently, under *Gollust,* where a plaintiff has standing at the commencement of the suit, an involuntary change in his status as a security holder resulting from a restructuring will not affect his standing to maintain the suit so long as minimal constitutional requirements are satisfied through the presence of some financial interest in the outcome of the litigation

14 In the present case, the major distinguishing factor is the form of restructuring. Instead of a stock-exchange merger, dELiA*s effectuated a cash-out merger The court concludes that § 16(b)'s remedial purpose should not be truncated by the legal nuances of the corporate restructuring. A shareholder of a parent corporation has a financial interest, albeit tenuous, in the disgorgement of profits obtained by insiders of a corporate subsidiary. Although Congress did not provide statutory standing for such a party to institute a § 16(b) suit,[FN1] a shareholder of a parent corporation has a cognizable interest for purposes of satisfying constitutional requirements. *See Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct 3315, 82 L Ed.2d 556 (1984) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.") Consequently, the court concludes that plaintiff satisfies the constitutional requirements to maintain the suit

FN1. Where a shareholder of a parent corporation brings a suit against a subsidiary of the parent under a derivative theory, the suit is referred to as double derivative in nature. Section 16(b) suits premised upon double derivative standing have been rejected by a majority of courts *See Lewis v McAdam,* 762 F 2d 800, 804 (9th Cir 1985) (concluding that standing does not exist in a cash-stock merger); *Untermeyer v Valhil, Inc.,* 665 F Supp. 297, 300-01 (S D N Y 1987) (concluding that standing does not exist in a cash-out merger) These cases are distinguished,

however, because the Supreme Court in *Gollust* differentiated between standing to institute suit and a sufficient interest to maintain a suit. *See Gollust,* 501 U.S. at 123-24.

15. Demand. Defendants also contend that plaintiff does not have standing for failure to satisfy Fed R Civ P 23.1's requirements for demand. It is clear, however, that Rule 23.1 does not apply to actions brought pursuant to § 16(b). For example, unlike typical derivative actions, the decision to bring a § 16(b) enforcement action does not enjoy protection of the business judgment rule *See Cramer v General Telephone & Elec Corp,* 582 F.2d 259, 276 (3d Cir 1978). Similarly, as discussed above, there are no requirements of continuous ownership. *See Gollust,* 501 U.S. at 124-25.

16 Where demand would have been futile, courts have excused the requirement under § 16(b). *See Berkwich v Mencher,* 239 F.Supp 792, 793-94 (S.D.N.Y.1965); *Grossman v. Young,* 72 F.Supp. 375 (S.D.N.Y.1947). On a motion to dismiss for failure to state a claim, the court must accept as true plaintiff's allegations of demand futility *Id* at 380

*4 17. In the present case, plaintiff pleads demand futility stating that he "has not made demand on dELiA*s Board of Directors because such demand would be futile in view of Alloy's acquisition of the company and defendants' control of dELiA*s Board. " (D.I.1, ¶ 28) Plaintiff's allegations of control are supported by those documents submitted by defendants in support of their motion to dismiss.[FN2] (D.I.12) Further, had plaintiff made a demand, § 16(b) would preclude him from filing suit until either sixty days had passed or the board had rejected his demand. Due to the short timing of the merger, plaintiff's shares would be canceled before he would have been permitted to bring suit. The failure of the dELiA*s board to bring suit on its own behalf after becoming aware of plaintiff's suit also supports plaintiff's futility allegations. *See Berkwich,* 239 F.Supp. at 794. Consequently, for purposes of resolving the pending motion to dismiss the court finds that plaintiff has sufficiently alleged the existence of demand futility.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F Supp 2d                                                                Page 4

Not Reported in F Supp 2d, 2004 WL 609374 (D Del )
**(Cite as: Not Reported in F.Supp.2d)**

> FN2. For example, the Former Director
> defendants represent four of the eleven
> members of the former dELiA*s and
> include three of the four former officers.
> (D.I 12, ex. 2 at B-3) Collectively, the
> Former Director defendants owned 37.8%
> of the dELiA*s stock.

D.Del ,2004
DiLorenzo v. Edgar
Not Reported in F Supp 2d, 2004 WL 609374
(D Del )

Briefs and Other Related Documents (Back to top)

• 2005 WL 2867884 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Reply Memorandum of
Law in Support of Motion to Vacate Stay (Sep. 23,
2005) Original Image of this Document (PDF)
• 2005 WL 2867883 (Trial Motion, Memorandum
and Affidavit) Memorandum of Law of Defendants
in Opposition to Plaintiff's Motion to Vacate Stay
(Sep. 19, 2005) Original Image of this Document
(PDF)
• 2005 WL 2603598 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Memorandum of Law in
Support of Motion to Vacate Stay (Aug. 22, 2005)
Original Image of this Document (PDF)
• 2003 WL 23472178 (Trial Motion, Memorandum
and Affidavit) Reply Memorandum of Law in
Support of Motion of Nominal Defendants dELiA*s
Corp. and Alloy, Inc. to Dismiss the Complaint
(Nov. 25, 2003)
• 2003 WL 23472179 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Memorandum of Law in
Opposition to Motions to Dismiss (Nov. 10, 2003)
• 2003 WL 23472177 (Trial Motion, Memorandum
and Affidavit) Memorandum of Law in Support of
Motion of Nominal Defendants dELiA*s Corp. and
Alloy, Inc. to Dismiss the Complaint (Oct. 16, 2003)
• 1:03cv00841 (Docket) (Aug. 27, 2003)

END OF DOCUMENT

© 2006 Thomson/West No Claim to Orig. U S Govt. Works.

Westlaw.

Slip Copy

Slip Copy, 2005 WL 1320875 (D.Del.), Fed. Sec. L. Rep. P 93,271
**(Cite as: Slip Copy)**

Page 1

**C**
Briefs and Other Related Documents

United States District Court,D. Delaware.
Leon SEGEN, derivatively on behalf of Intraware,
Inc., Plaintiff,
v.
COMVEST VENTURE PARTNERS, LP; Comvest
Management, LLC; Commonwealth Associates
Management Company, Inc.; Commonwealth
Associates, LP; RMC Capital LLC; Michael S.
Falk; Robert Priddy; Travis L. Provow; Keith
Rosenbloom; Intraware Inc., Defendants.
**No. Civ.A. 04-822 JJF.**

June 2, 2005.

Theodore J. Tacconelli, of Ferry, Joseph & Pearce,
P.A., Wilmington, Delaware, Paul D. Wexler, of
Bragar Wexler Eagel & Morgenstern, P.C., New
York, New York; Glenn F. Ostrager, of Ostrager
Chong Flaherty & Broitman P.C., New York, New
York, for Plaintiff, of counsel.
Jeffrey L. Moyer, and Srinivas M. Raju, of
Richards, Layton & Finger, P.A., Wilmington,
Delaware, Clifford Thau, Steven Paradise, and Sean
Bukowski, of Vinson & Elkins, LLP, New York,
New York, for Defendants ComVest Venture
Partners LP, ComVest Management LLC,
Commonwealth Associates, LP, Michael S. Falk,
Travis L. Provow, and Keith Rosenbloom, of
counsel.
Neal J. Levitsky, of Fox Rothschild, LLP,
Wilmington, Delaware, Robert N. Dokson, of Ellis,
Funk, Goldberg, Labovitz & Dokson, P.C., Atlanta,
Georgia, for Defendants Robert Priddy and RMC
Capital, LLC., of counsel.

*MEMORANDUM OPINION*

FARNAN, J.
*1 Presently before the Court is a Motion To
Dismiss The Complaint (D.I.5) filed by Defendants

ComVest Venture Partners, LP, ComVest
Management, LLC, Commonwealth Associates
Management Company, Inc., Commonwealth
Associates LP, Michael S. Falk, Travis L. Provow,
and Keith Rosenbloom ("the ComVest Defendants"
), and a Motion To Dismiss (D.I.8) filed by
Defendants Robert Priddy and RMC Capital, LLC ("
the Priddy Defendants") Both motions rely upon
the same grounds and arguments. (D.I.9.) For the
reasons discussed, the motions will be denied.

BACKGROUND

On July 6, 2004, Plaintiff, Leon Segen, filed this
lawsuit under Section 16(b) of the Securities
Exchange Act of 1934 (the "Exchange Act"), 15
U.S.C. § 78p. Plaintiff claims to sue derivatively on
behalf of Intraware, Inc. ("Intraware") This action
arises from allegations that Defendants, a § 13(d)
group, garnered short-swing profits disgorgeable to
Intraware.

Section 16(b) of the Exchange Act provides that if a
statutory insider purchases and sells, or sells and
purchases, shares of any equity security of an issuer
within a period of less than six months, any profits
arising from those transactions are recoverable by
the issuer. A statutory insider is defined as an
officer or director of the issuer or a greater than
10% holder of the issuer's securities. *See* 15 U.S.C.
§ 78p(b).

Pursuant to SEC Rule 16a-1(a)(1), promulgated
under the Exchange Act, where two or more
persons "act as a partnership, limited partnership,
syndicate, or other group for the purpose of
acquiring, holding or disposing of securities of an
issuer" as set forth in § 13(d)(3) of the Exchange
Act, such persons are deemed a "group" for
purposes of determining § 16(b) liability In making
the group determination, the shares held by persons
in such a group are aggregated to determine whether
the group has a greater than 10% beneficial

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 2

Slip Copy, 2005 WL 1320875 (D.Del.),  Fed. Sec. L. Rep. P 93,271
**(Cite as: Slip Copy)**

ownership in a registered class of equity securities of the issuing corporation. SEC Rule 16a-1(a)(1). If the group is a greater than 10% beneficial owner, each group member is potentially subject to liability under § 16(b).

In his Complaint, Mr. Segen alleges that the ComVest Defendants and the Priddy Defendants are group members who acted for the purpose of acquiring, holding, or disposing of equity securities issued by Intraware. (D.I.1, para.15.)

Mr. Segen asserts the following facts. Mr. Falk, Mr. Priddy, and Mr. Rosenbloom were limited partners of ComVest Venture Partners, LP and the managers of ComVest Management, LLC. Commonwealth Associates Management Company wholly owned ComVest Managment, LLC. (D.I.1, para.4.) Mr. Priddy, Mr. Rosenbloom were directors and Mr. Falk was Chairman and principal stockholder of Commonwealth Associates Management Company. (D.I.1, para.5.)

Mr. Falk is the Chairman, CEO, and President of Commonwealth Associates, LP, and Mr. Provow is a partner and board member. Commonwealth Associates, LP is a limited partner of ComVest Venture Partners, LP. (D.I.1, para.6.)

**\*2** Mr. Priddy is the Chairman and principal member of RMC Capital, LLC, a Georgia limited liability company whose pricipal business is investing in securities. (D.I.1, para.7.)

On April 2, 2001, ComVest Venture Partners, LP (" Comvest") and Mr. Priddy invested $2,000,000 and $1,000,000, respectively, in a private placement by Intraware. (D.I.1, para.17.) ComVest purchased 200,000 shares of Intraware's Series B Convertible preferred stock and warrants to purchase 400,000 shares of Intraware common stock at an initial exercise price of $1.125 per share. Mr. Priddy purchased 100,000 shares of Series B preferred stock and warrants to purchase 200,000 of common stock.

As a result of participation in the April placement, the group became a greater than 10% owner of Intraware's common stock and Mr. Falk was

appointed to Intraware's Board of Directors. Commonwealth Associates, LP ("Commonwealth") acted as the placement agent for Intraware in the April placement, and was paid a fee of 6% of the gross proceeds of the placement and its expenses. (D.I.1, para.19.)

On August 31, 2001, ComVest and Mr. Priddy invested in a second private placement by Intraware. In connection with this placement, Mr. Provow was appointed to the Board of Directors as a designee of the group. Mr. Provow also invested in the August placement. (D.I.1, para.20.) Commonwealth again acted as the placement agent for Intraware in the August placement, and was paid a placement fee of 5% of the gross proceeds of the August placements, its expenses, and warrants to purchase 700,000 shares of Intraware stock at an exercise price of $.01 per share. In or about November 2001, Commonwealth exercised its August warrants and distributed a portion of the shares to ComVest, Mr. Falk, and Mr. Rosenbloom. (D.I.1, para.20.)

In order for Intraware to issue its debt in the August placement, ComVest and Mr. Priddy agreed to exchange their Series B preferred shares for shares of a new Series B-1 preferred stock. In connection with this exchange, the group members required Intraware to lower the conversion price of ComVest's and Mr. Priddy's Series B preferred shares and the exercise price of their April warrants. (D.I.1, para.22.)

Following the August placement, ComVest and Commonwealth made certain distributions to other group members, all of the details of which are not known. (D.I.1, para.30.)

On November 9, 2001, ComVest sold 200,000 shares of Intraware's common stock at a price of $.58 per share, matchable with the purchase on August 31, 2001, at $.01 per share, yielding short swing profits of $114,000. Further, Mr. Priddy engaged in a series of trades that led to disgorgeable profits of $1,195,838.37. (D.I.1, para 31.)

On May 24, 2002, ComVest and Mr. Priddy participated in a third private placement by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 1320875 (D.Del.), Fed. Sec. L. Rep. P 93,271
**(Cite as: Slip Copy)**

Intraware. Comvest invested $250,000 and Mr. Priddy invested $300,000. Commonwealth again acted as the placement agent. (D.I.1, para.23.)

On July 5, 2002, Mr. Segen made demand on Intraware to commence this action. By letter dated September 5, 2002, Intraware declined to commence the lawsuit. (D.I.1, para.38.)

### PARTIES' CONTENTIONS

*3 By their motions, Defendants contend that Mr. Segen can prove no set of facts consistent with his allegations that would entitle him to relief for three reasons. First, Defendants contend that Mr. Segen did not bring this lawsuit within the two year statute of limitations period. Second, Defendants contend that Mr. Segen's Complaint does not state facts that show the existence of a § 13(d) group for purposes of the Section 16(b) of the Exchange Act. Third, Defendants contend that Mr. Segen's Complaint does not plead particularized facts to show that the decision by the Intraware's Board of Directors to refuse demand was wrongful and not protected by the business judgment rule.

In response, Mr. Segen contends that the law is clear that the two year limitations period is tolled until Defendants comply with the requirements of § 16(a) of the Exchange Act by filing an SEC Form 4 with the Commission or until Intraware had actual knowledge of Defendants' violation of the statute. Mr. Segen further contends that the Complaint properly alleges that there was a § 13(d) group that traded Intraware securities, and that the pleading specifies the acts performed by the group members. In support of his contention, Mr. Segen cites a number of cases in which other courts have denied motions to dismiss at the pleading stage. Finally, Mr. Segen contends that the business judgment rule is not available to a defendant in these circumstances to prevent a shareholder from bringing suit if the issuer refuses to do so.

Defendants reply that Mr. Segen is not entitled to equitable tolling of the statute of limitations because Defendants were not required to file the forms at issue as they did not own more than 10% of the

securities of Intraware and were not otherwise a " group." Next, Defendants reply that the Complaint makes clear that the alleged group members disposed of their securities at different times and at different prices, thereby preventing Plaintiff from alleging facts necessary to plead a group even under the notice pleading standard of Federal Rule 8. Finally, Defendants reply that Intraware's Board determined that Defendants did not constitute a group for Section 16(b) purposes and, thus, are entitled to the benefit of the business judgment rule.

### DISCUSSION

#### I. Standard Of Review

When a court analyzes a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must accept the factual allegations of the Complaint as true. *Langford v. City of Atlantic City,* 235 F.3d 845, 847 (3d Cir.2000). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.*

#### II. Whether Plaintiff's Complaint Satisfies the Statute Of Limitations

Because the Court concludes that the Complaint alleges facts sufficient to establish the potential applicability of equitable tolling, the Court will deny Defendants' motions to dismiss with regard to the statute of limitations.

The statute of limitations for a § 16(b) claim runs for two years from the date of the transaction that led to the profits until the filing of the complaint. 15 U.S.C. § 78p(b). Citing authority from the Second and Ninth Circuits, Plaintiff contends that tolling of the time period is appropriate when no SEC Form 4 has been filed and the issuer does not have actual notice of all of the information that is contained in a Form 4. Defendants do not dispute that they did not file § 16(a) reports. Rather, they contend that Mr. Segen had actual notice that Defendants allegedly realized short-swing profits at some point prior to his sending a demand letter on July 5, 2002.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 1320875 (D Del ), Fed. Sec. L. Rep. P 93,271
**(Cite as: Slip Copy)**

**\*4** Accepting the factual allegations of the Complaint as true, as the Court must do on a motion to dismiss, the Court concludes that Mr. Segen has sufficiently alleged that he lacked adequate notice of Defendants' wrongful conduct to support an equitable tolling claim (D.I.1, para 29.) Further, the Court concludes that whether equitable tolling is warranted in these circumstances requires further development of the facts and, therefore, may best be addressed once discovery is complete by a motion for summary judgment. Accordingly, the Court will deny Defendants' motions to dismiss with regard to the statute of limitations claim

### II. Whether The Complaint Fails To State A Section 16(b) "Group" Claim

Because the Court concludes that the Complaint alleges facts sufficient to establish that Defendants potentially acted in concert with respect to their investments in Intraware, the Court will deny Defendants' motions to dismiss with regard to the " group" claim

The Court finds the Complaint gives details with regard to the alleged relationships between the Defendants and that the Complaint alleges that Defendants entered into the same agreements with respect to investments made on April 2, 2001, August 31, 2001, and May 24, 2002, and in connection with exchanging Series B preferred shares for Series B-1 preferred shares. (D.I.1, paras.17-26.) With these facts alleged, the Court cannot conclude that Mr. Segen has failed to plead facts to support his claim that Defendants acted as a group for purposes of § 16(b). In the Court's view, there must be a full factual record for the Court to properly determine whether a group exists and, if so, what its dimensions are. For these reasons, the Court will deny Defendants' motions with regard to the "group" claim.

### III. Whether The Business Judgment Rule Is Applicable To Section 16(b) Lawsuits

Because shareholders have an absolute right to sue if the issuer does not sue within sixty days of receiving a demand, the Court will deny Defendants' motions with regard to the business judgment rule.

A stockholder may maintain an action against a corporate insider under § 16(b) of the Exchange Act "if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter...." Thus, § 16(b) creates a primary right to sue in favor of the issuer and its security holders. *See, e.g., Pellegino v Nesbit,* 203 F.2d 463, 466-67 (9th Cir.1953) It is well-settled that, "although an action under § 16(b) cannot be brought unless the shareholder has first made a demand on the directors, the directors' decision not to prosecute the suit does not preclude a subsequent action by the shareholder himself." *Cramer v Gen Tel & Elecs Corp,* 582 F.2d 259, 276 n. 22 (3d Cir.1978). Thus, the Court will deny Defendants' motions with regard to their contentions that Plaintiff has not overcome the presumption of the business judgment rule.

### CONCLUSION

**\*5** For the reasons discussed, the Court will deny the Motion To Dismiss The Complaint (D.I.5) filed by the ComVest Defendants and the Motion To Dismiss (D.I.8) filed by the Priddy Defendants.

An appropriate Order will be entered.

### *ORDER*

At Wilmington this *2* day of June 2005, for the reasons set forth in the Memorandum Opinion issu ed this date;

IT IS HEREBY ORDERED that:

1) The Motion To Dismiss The Complaint (D.I.5) filed by Defendants ComVest Venture Partners, LP, ComVest Management, LLC, Commonwealth Associates Management Company, Inc., Commonwealth Associates LP, Michael S. Falk, Travis L. Provow, and Keith Rosenbloom is *DENIED,* and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2005 WL 1320875 (D Del ), Fed. Sec L Rep P 93,271
**(Cite as: Slip Copy)**

2) The Motion To Dismiss (D.I.8) filed by Defendants Robert Priddy and RMC Capital, LLC is *DENIED*.

D Del ,2005.
Segen v. Comvest Venture Partners, LP
Slip Copy, 2005 WL 1320875 (D.Del.), Fed. Sec L. Rep. P 93,271

Briefs and Other Related Documents (Back to top)

• 2006 WL 1182440 (Trial Motion, Memorandum and Affidavit) Defendants Robert Priddy's and RMC Capital, LLC's Brief in Opposition to Plaintiff's Motion to Vacate Notices of Deposition, Quash Subpoenas and for Rule 37 Costs and in Support of Priddy Defendants' Request for Rule 37 Fees and Expenses (Mar 20, 2006) Original Image of this Document (PDF)
• 2006 WL 1182439 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Support of Motion to Quash Discovery and for Rule 37 Costs (Mar. 1, 2006) Original Image of this Document (PDF)
• 2005 WL 2603815 (Trial Pleading) First Amended Answer of Defendants Robert Priddy and Rmc Capital Llc (2005) Original Image of this Document (PDF)
• 1:04cv00822 (Docket) (Jul. 6, 2004)
• 2004 WL 3558855 (Trial Pleading) First Amended Answer of Defendants Robert Poriddy and Rmc Capital, LLC (2004) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.