# UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

JEFFREY T. STRAUSS, derivatively
on behalf of AFFILIATED COMPUTER
SERVICES, INC.,

     Plaintiff,

v.

JEFFREY A. RICH, MARK A. KING,
and AFFILIATED COMPUTER
SERVICES, INC.,

     Defendants.

C.A. No. 06-318-SLR

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO MOTIONS TO DISMISS

Theodore J. Tacconelli (#2678)
FERRY, JOSEPH & PEARCE, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 109899

Paul D. Wexler
BRAGAR WEXLER & EAGEL, P.C.
885 Third Avenue
New York, New York 10022

Glenn F. Ostrager
OSTRAGER CHONG FLAHERTY
 & BROITMAN P.C.
250 Park Avenue
New York, New York 10177-0899

Dated: September 25, 2006

Attorneys for Plaintiffs

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................... i

Preliminary Statement ...................................... 1

Facts ...................................................... 3

Governing Law .............................................. 6

Option Backdating .......................................... 7

Standards On A Rule 12(b)(6) Motion ........................ 8


POINT I    THE COMPLAINT IS NOT BARRED
           BY THE STATUTE OF LIMITATIONS ..................... 9


POINT II   SEC RULE 16B-3(d) DOES NOT EXEMPT THESE
           BACKDATED OPTION GRANTS BECAUSE THEY
           WERE NOT LEGITIMATE TRANSACTIONS ................. 14

           A.    Rule 16b-3(d) Applies Only to Legitimate
                 Transactions Made in the Ordinary
                 Course of an Issuer's Business .............. 15

           1.    The Regulatory History of Rule 16b-3(d)
                 Demonstrates That It Was Concerned
                 With Legitimate Issuer Transactions ..... 18


POINT III  DEMAND SHOULD BE EXCUSED UNDER
           THE CIRCUMSTANCES PRESENTED HERE ................. 22

           A.    Demand Would Have Been Futile .............. 24

           B.    Demand Is Excused Because of Potential
                 Statute of Limitation Issues ................ 26


POINT IV   LEAVE TO REPLEAD SHOULD BE GRANTED ............... 27


Conclusion ................................................. 28

## TABLE OF AUTHORITIES

### Cases

*Benisch v. Cameron*,
81 F. Supp. 882, 885 (S.D.N.Y. 1948) ....................... 23, 26

*Berkwich v.Mencher*,
239 F.Supp. 792 (S.D.N.Y. 1965) ...........................   25

*Blau v. Albert*,
157 F.Supp. 816 (S.D.N.Y. 1957) ........................... 11, 13

*Colan v. Monumental Corp.*,
524 F.Supp. 1023, 1027 (N.D. Ill. 1981) ...................   24

*Conley v. Gibson*
355 U.S. 41 (1957) ........................................    8

*Cramer v. General Tel & Elec Corp.*,
582 F.2d 259, 276 (3d Cir. 1978) ..........................   23

*DiLorenzo v. Edgar*,
2004 WL 609374 (D. Del. 2004) .............................   23

*Dreiling v. American Express Travel Related Services*,
351 F.Supp. 2d 1077, 1084-85 (W.D.WA. 2004),
*aff'd* 458 F.3d 942 (9th Cir. 2006) ......................... 13, 16, 18

*Foremost-McKesson, Inc. v. Provident Sec. Co.*,
423 U.S. 232 (1976) ....................................... 17, 19

*Goldman v. Belden*
754 F.2d 1059 (2d Cir. 1985) ..............................    8

*Gollust v. Mendel*
501 U.S. 115 (1991) .......................................   19

*Grossman v. Young*,
72 F.Supp. 375 (D.N.Y. 1947) .............................. 11, 23, 25

*Gryl v. Shire Pharm. Group PLC*,
298 F.3d 136 (2d Cir.2002) ................................   18

*Justofin v. Metor Life Ins. Co.*,
372 F.3d 517, 525 (3rd Cir. 2004) ..........................   27

*Kehr Packages Inc., v. Fidelcor, Inc.,*
926 F.2d 1406, 1409 (3d Cir. 1991) ........................    8

*Kern County Land Co. v. Occidental Petroleum Corp.,*
411 U.S. 582, 594 (1973) ................................. 7, 16, 17

*Levy ex rel. Mktg. Servs. Group, Inc.*
*v. GE Capital Corp.,*
2001 U.S. Dist. LEXIS 13099 (S.D.N.Y. 2001) ...............   24

*Litzler v. CC Investments, Ltd.*
362 F.3d 203 (2d Cir. 2004) .............................. 9, 11, 12

*Magna Power Co. v. Dow Chem. Co.*
136 F.3d 316 (2d Cir. 1998) ...............................    4

*Morales v. Executive Telecard, Inc.*
95 Civ. 10202 (KMW), 1998 U.S.Dist. LEXIS 8839,
1998 WL 314734 (S.D.N.Y. June 12, 1998) ...................   13

*Netter v. Ashland Paper Mills, Inc.,*
19 F.R.D. 529 (S.D.N.Y. 1956) .............................   25

*Pellegrino v. Nesbit*
203 F.2d 463 (9th Cir. 1953) ............................. 23, 24

*Morales v. McIntyre Porcupine Mines, Ltd.,*
U.S. Dist. LEXIS 11539 (S.D.N.Y. October 17, 1972) .........   23

*Morales v. Mylan Laboratories, Inc.,*
443 F. Supp. 778 (W.D. PA 1978) ...........................   26

*Rosen ex rel. Egghead.Com, Inc. v. Brookhaven*
*Capital Management, Co. Ltd.*
179 F.Supp.2d 330 (S.D.N.Y. 2002) ........................ 12, 13

*Segen v. Comvest Venture Partners, LP,*
2005 WL 1320875 (D. Del. 2005) ............................   23

*Shane v. Fauver,*
213 F. 3d 113, 115 (3rd Cir. 2000) ........................   27

*Shattuck Denn Mining Corp. v. La Morte,*
1974 U.S. Dist. LEXIS 9621 (S.D.N.Y. 1974) ................   11

*Silverman v. Re,*
194 F. Supp. 540 (S.D.N.Y. 1961) ..........................   25

*Tristar Corp. v. Freitas*
84 F. 3d 550 (2d Cir. 1996) ................................   12

*Trump Hotels  & Casino Resorts, Inc.*
*v. Mirage Resorts, Inc.,*
140 F.3d 478, 483 (3d Cir. 1998) ..........................    8

*Walsh v. McGee*
918 F. Supp. 107 (S.D.N.Y. 1986) ..........................    8

*Weissman v. Spector,*
158 F. Supp. 789 (S.D.N.Y. 1958) ..........................   25

*Whitaker v. Whitaker Corp.*
639 F. 2d 516 (9th Cir.),
*cert denied*, 454 U.S. 1031 (1981) ........................ 9, 11, 26

## Statutes and Rules

Securities Exchange Act of 1934, § 16(a) ...................    6

Securities Exchange Act of 1934, § 16(b) ................... *passim*

Fed.R.Civ.P. 12(b) ........................................    8

Fed.R.Civ.P. 15 ...........................................   27

Fed.R.Civ.P. 23.1 .........................................   23

SEC Rule 16b-3(d) ......................................... *passim*

SEC Rule 16b-6(a) ......................................... 4, 7

SEC Rule 16b-6(c) ......................................... 4, 7

## SEC Materials

*Ownership Reports and Trading by Officers,*
*Directors, and Principal Security Holders*,
Release Nos. 34-28869; 35-25254; IC-17991,
56 FR 7242 (Feb. 21. 1991) ............................ 19, 20

*Ownership Reports and Trading by Officers,*
*Directors and Principal Stockholders,*
Release No. 34-36356, 60 Fed. Reg. 53832, 53834
(Oct. 17, 1995) ........................................... 20


*Ownership Reports and Trading by Officers,*
*Directors and Principal Security Holders,*
Release Nos. 34-37260; 35-26524; IC-21997,
61 Fed.Reg. 30,376 (June 14, 1996) ................... *passim*

## UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

JEFFREY T. STRAUSS, derivatively
on behalf of AFFILIATED COMPUTER
SERVICES, INC.,

     Plaintiff,

v.

JEFFREY A. RICH, MARK A. KING,
and AFFILIATED COMPUTER
SERVICES, INC.,

     Defendants.

**C.A. No. 06-318-SLR**

## Preliminary Statement

This case arises out of the backdating of certain
options issued to two executives of Affiliated Computer
Services, Inc. ("Affiliated" or the "Company").
"Backdating" generally refers to dating an option grant to
predate the actual award date in order to provide for an
exercise price lower than the market price of the company's
stock on the actual grant date.

The ramifications of this conduct are significant from
an accounting and legal perspective, but particularly in
the securities laws.  In his complaint, plaintiff Jeffrey
T. Strauss, suing derivatively on behalf of Affiliated,
alleges that short-swing profits of approximately $7.1

1

million were generated to the individual defendants as a
consequence of this backdating scheme, which must be
disgorged pursuant to §16(b) of the Securities Exchange Act
of 1934 ("§16(b)").

Strauss submits this memorandum of law in opposition
to: 1) the motion of defendants Jeffrey A. Rich ("Rich")
and Mark A. King ("King") to dismiss the complaint pursuant
to Fed. R. Civ. P. 12(b)(6); and 2) Affiliated's motion to
dismiss the complaint for failure to make a proper demand.
Specifically, Rich and King (the "individual defendants")
argue that the statute of limitations bars the claims and
that the transactions identified in the complaint are
exempt from the application of §16(b) by SEC Rule 16b-3(d).

We show below that all of these motions should be
denied. First, with respect to the individual defendants,
the statute of limitations is no bar to this action because
it has been equitably tolled by the defendants' failure to
make accurate disclosure in their SEC Form 4 and Form 5
filings concerning their options grants. These filings
falsely stated that the options were granted on a date
certain and that the transactions were entitled to an
exemption as *bona fide* option grants. The complaint alleges
that these option grants were backdated, that the grants
were fraudulent and that defendants' claim to the exemption
were improper and incorrect. As we show in Point I, *infra*,
the failure of Rich and King to make full and accurate
disclosure tolls the running of the limitations period.

Second, the individual defendants are not entitled to
an exemption under SEC Rule 16b-3(d) for the options
grants. The exemption provided by this Rule is limited to
*bona fide* transactions between the issuer and insiders
where the SEC has determined there is a reduced opportunity
for speculative abuse. As we show below, this is plainly
not such a case and thus the SEC rule does not provide any
shelter from liability for Rich and King. (Point II, *infra*)

Third, the complaint should not be dismissed for
failure to make a demand on the board to commence this
lawsuit. Unlike traditional state law shareholder
derivative suits, such a demand is not strictly required
under §16(b), especially where it is plain that the
corporation will not bring it or where the limitations
period is at risk. Because both of these factors are
present here, demand was excused and the motion to dismiss
by Affiliated should be denied. (Point III, infra)

## Facts

The complaint alleges the following facts which must
be considered true on this motion.

On or about March 6, 2006, the Company filed a Form
8-K with the Securities and Exchange Commission reporting
that the SEC was conducting an investigation into the
Company's option grant practices for the period from
October 1998 through March 2005.  Rich was granted options

3

to purchase 100,000 shares effective July 11, 2000 at an exercise price of $32.875 per share; Rich was granted additional options to purchase 400,000 shares effective July 23, 2002 at an exercise price of $35.75 per share; and King was granted options to purchase 200,000 shares effective July 23, 2002 at an exercise price of $35.75 per share.   Each of these grants was backdated to improperly take advantage of historically low trading prices of the Company's stock.

Rich and King caused the Company to manipulate the price of the stock options in order to benefit themselves. In particular, the artificial grant dates provided Rich and King with lower exercise prices.   Because the Company used artificial grant dates, these stock option grants were not granted in conformance with the requirements of the Company's stock option plans and were not properly approved by the Company under SEC Rule 16b-3(d).   Under SEC Rule 16b-6(a) and (c), 17 C.F.R. § 240.16b-6(a) and (c), these option grants are therefore deemed to be purchases of the same number of shares underlying the options at a price per share equal to the market price on the actual date of the grants.   *See, Magma Power Company v. The Dow Chemical Company,* 136 F.3d 316,321-322 (2d Cir. 1998).   These purchase prices are believed to be $33.25 in the case of

4

the option granted effective July 11, 2000, and $37.00 in the case of the options granted effective July 23, 2002.

During the period of 2000 through 2002, Rich and King engaged in sales of the Company's stock at various times that occurred within six months of the backdated option grants set forth above. Rich sold at least 100,000 shares within the six-month statutory period of the July 2000 option grant at prices ranging between $46 and $64 per share, garnering short-swing profits of at least $3 million. Rich also sold 208,000 shares between January 29, 2002 and January 21, 2003 at prices ranging between $44 and $56, garnering short-swing profits of at least an additional $3 million. King sold 72,000 shares between May 21, 2002 and January 22, 2003 at prices ranging between $49 and $55, garnering short-swing profits of at least $1.1 million.

Rich and King reported the foregoing option grants in Form 4 and Form 5 filings with the SEC, wherein they assert that these option grants were exempt from the statute under SEC Rule 16b-3(d). 17 C.F.R. § 240.16b-3(d)(1). Because the options were not granted in the ordinary course of business, or in accordance with the terms of the governing options plans, and were illegally backdated, this exemption is unavailable.

## Governing Law

Section 16(a) of the Exchange Act ("§ 16(a)") defines insiders as "[e]very person who is directly or indirectly the beneficial owner of more than ten per centum of any class of any equity security . . . which is registered pursuant to section 12 . . . or who is a director or an officer of the issuer of such security." *Id.* Section 16(a) requires statutory insiders to file ownership reports with the SEC upon becoming subject to the statute setting forth the amount of all equity securities of the issuer of which the insider is a beneficial owner. Thereafter, if there is a change in the insider's ownership position, the insider is required to file an amended statement of ownership within two business days of the transaction.

Section 16(b) of the Exchange Act provides that if a statutory insider purchases and sells or sells and purchases shares of any equity security of such an issuer within a period of less than six months, any profits arising from those transactions are recoverable by the issuer. [1]

---

[1]   Section 16(b) reads as follows: "For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer . . . shall inure to and be recoverable by the issuer." 15 U.S.C. §78p(b).

6

Under SEC Rules 16b-6(a) and (c), 17 C.F.R. § 240.16b-6(a) and (c), derivative securities, like option grants, are deemed purchases of the same number of shares underlying the options at a price per share equal to the market price on the actual date of the grants.  These purchases can be matched with sales made during the prior and/or subsequent six-month period to compute disgorgeable profits.

## Option Backdating

"Backdating" is a manipulative practice that, among other things, conceals the transfer of shareholder equity to executives.  "Backdating" is a particularly abusive scheme when, as is the present case, executives sell substantial shares at artificially inflated prices (due, in large part, to misleading financial statements resulting from the backdating) within a period of six months of receiving backdated options.  In such cases, executives are, in effect, betting on a horse race after the finish, because they effectively are purchasing shares (i.e., the shares underlying their options) at the lower, predated price, and then turning around and selling their shares. This kind of abusive scheme is exactly what Congress sought to curtail by enacting Section 16(b) of the Securities Exchange Act of 1934.  *Kern County Land Co. v. Occidental Petroleum Corp.,* 411 U.S. 582, 594 (1973).

In the present case, defendants abused their positions as executives to benefit from backdated options and sold their shares within six months.

## Standards on a Rule 12(b)(6) Motion

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, (1957); *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985). A Rule 12(b)(6) motion is designed to "test the formal sufficiency of the statement of claim for relief. The motion is viewed with disfavor and is rarely granted". *Walsh v. McGee*, 918 F. Supp. 107, 112 (S.D.N.Y. 1986) (quoting *Wright* & *Miller* §1350). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint". *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir. 1998). The moving party has the burden of persuasion. *See, Kehr Packages Inc., v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

8

## POINT I
### THE COMPLAINT IS NOT BARRED
### BY THE STATUTE OF LIMITATIONS

Defendants are correct that the statute of limitations on a §16(b) claim runs for two years from the date of the transaction that led to the profits until the filing of the complaint. In this case, that two year period has expired. However, plaintiff submits that the limitations period has been tolled in this case as a result of defendants' failure to make proper filings with the SEC.

Although there is no controlling Third Circuit authority as to equitable tolling under §16(b), there are two Circuit level decisions permitting tolling of the statute of limitations that are applicable here. Both the Ninth and Second Circuits have held that, where the defendants fails to make proper filings with the SEC as required by §16(a), the two-year period is tolled until the filing is made. See, *Whitaker v. Whitaker Corp.*, 639 F. 2d 516, 527-30 (9th Cir.), *cert denied*, 454 U.S. 1031 (1981); *Litzler v. CC Investments, Ltd.*, 362 F.3d 203 (2d Cir. 2004). The defendants' filings in this case did not properly report the option grants and under the rationale of either Circuit decision, this action is timely.

9

The complaint alleges that although the individual
defendants filed Forms 4 and 5, they improperly indicated
on the Forms that the transactions were entitled to an
exemption under Rule 16b-3(d). A review of the Forms 4 and
5 attached to defendants' motion papers shows that the
option grants were designated with an "A" indicating that
they constituted a "grant, award or other acquisition
pursuant to Rule 16b-3(d)" and were thus exempt from
§16(b). Instructions to Form 4,

**http://www.sec.gov/about/forms/secforms.htm#1934forms.**
Because these were backdated options and thus were not *bona
fide* transactions entitled to the exemption, a correct SEC
filing would have designated these transactions with a "P"
indicating that they constituted an "open market or private
purchase of non-derivative or derivative security". *Id.*
That designation would have made it clear that a §16(b)
disgorgement claim existed. Here, the defendants' filings
misled the public into believing there was no such claim.
The tolling rule is designed to remedy this type of
deception.

The policy behind the tolling of the limitations
period is succinctly summarized by the *Whitaker* court:

> However, examining the legislative purpose of §16
> as a whole and considering the place of the time
> provision in that overall legislative scheme, we

10

infer that tolling of the two year time period is
required when the pertinent §16(a) reports are
not filed. The legislative history and purpose of
§16, discussed in Part II-A above, clearly reveal
a strong congressional intent to curb insider
trading abuses. This purpose would be thwarted if
insiders could escape liability by not reporting
as required under § 16(a). "(I)t would be a
simple matter for the unscrupulous to avoid the
salutary effect of Section 16(b) which provides a
remedy for the recovery of short term profits,
simply by failing to file monthly reports in
violation of subdivision (a) and thereby
concealing from prospective plaintiffs the
information they would need to adequately protect
their interests. Such a construction would reward
the violation of the statute and would manifestly
frustrate congressional intent." Blau v. Albert,
157 F.Supp. 816, 819 (S.D.N.Y.1957). Accord
Grossman v. Young, 72 F.Supp. at 378-79.

                    *    *    *

In summary, we hold that an insider's failure to
disclose covered transactions in the required s
16(a) reports tolls the two year limitations
period for suits under § 16(b) to recover profits
connected with such a non-disclosed transaction.
(footnote omitted) The two-year period for s
16(b) begins to run when the transactions are
disclosed in the insider's § 16(a) report. See
Blau v. Albert, 157 F.Supp. at 819; Shattuck Denn
Mining Corp. v. La Morte, supra. This
interpretation is consistent with the legislative
scheme of § 16. It is supported by prior cases
construing the section and by securities
commentators. The district court's result on the
limitations issue is therefore reversed.

Whittaker v. Whittaker Corp., 639 F.2d 516, 528, 530 (9th
Cir. 1981).

In Litzler, the Second Circuit took a similar

approach, holding that "the two-year limitations period of

Section 16(b) is subject to equitable tolling when a

11

covered party fails to comply with Section 16(a) and that

such tolling ends when a potential claimant otherwise

receives sufficient notice that short-swing profits were

realized by the party covered by Section 16(a)."

362 F.3d 203, 205 (2d Cir. 2004). The Court held that to do

otherwise would frustrate the purposes of both §16(a) and §

16(b). *Id.* at 207.  As the Court stated:

> However, Section 16 compels disclosure (through
> a Form 4) that is so clear that an insider's
> short-swing profits will be discovered without
> any investigation other than the putting together
> of two and two. The prophylaxis of Section 16
> works by imposing an "absolute duty" of
> disclosure upon insiders, officers, and the other
> parties covered by its obligations, *Grossman* 72
> F.Supp. at 378; that mechanism would be impaired
> if the tolling triggered by non-compliance was
> ended or defeated by mere inquiry notice, or by
> circumstances in which a person would or should
> have realized the non-compliance, or by the
> ability of a shareholder or company to piece
> together the substance of a Form 4 from disparate
> sources of information. We hold that the
> incentives of Section 16 are best served if
> tolling is triggered by noncompliance with the
> disclosure requirements of Section 16(a) through
> failure to file a Form 4.(footnote omitted) Such
> tolling should continue only until the claimant
> or (depending on the circumstances) the company
> gets actual notice that a person subject to
> Section 16(a) has realized specific short-swing
> profits that are worth pursuing.

*Litzler v. CC Investments, L.D.C.,* 362 F.3d 203, 208 (2d
Cir. 2004)

In accord, *Tristar Corp. v. Freitas*, 84 F. 3d 550 (2d Cir.

1996); *Rosen ex rel. Egghead.Com, Inc.* v. *Brookhaven*

*Capital Management, Co. Ltd.*, 179 F.Supp.2d 330 (S.D.N.Y.

2002); *Morales v. Executive Telecard, Inc.,* 95 Civ. 10202,

1998 WL 314734 (S.D.N.Y. June 12, 1998); *Dreiling v.*

*American Express Travel Related Services*, 351 F.Supp. 2d

1077, 1084-85 (W.D.WA. 2004), *aff'd* 458 F.3d 942 (9th Cir.

2006). As Judge Haight noted in *Brookhaven Capital,* supra,

citing then District Judge Kaufman's opinion in *Blau v.*

*Albert*, 157 F. Supp. 816 (S.D.N.Y. 1957).

> If a defendant insider has failed to file §16(a)
> reports, a §16(b) plaintiff need do no more than
> prove that failure, which *ipso facto* establishes
> defendant's wrongful concealment preventing
> plaintiff's discovery of the claim, relieves the
> plaintiff of making a further showing of his own
> due diligence, and triggers equitable tolling.
> That is the conclusion Judge Kaufman reached in
> *Blau,* 157 F.Supp. at 819: "[T]he only fraud
> necessary to invoke the federal equitable
> doctrine is a violation of the statutory trading
> by insiders"; and concealment of that violation,
> "whether intentional or inadvertent, effectively
> prevents suit and demands the mitigating
> construction of the statute of limitations⋯" I
> agree with that conclusion, because it is the
> only way to implement effectively the public
> policy declared in § 16 of the Act.

*Rosen ex rel. Egghead.Com, Inc. v. Brookhaven Capital*
*Management, Co. Ltd.,* 179 F.Supp.2d 330, 338 (S.D.N.Y.2002)

Here, the complaint alleges that defendants reported

in their Forms 4 and 5 that the option transactions were

exempt from §16(b). Thus, the public was left with the

incorrect impression that no §16(b) claims existed. Under

these circumstances, it is plain that the statute of
limitations is tolled.  The motion to dismiss on this basis
should be denied.

## POINT II

### SEC RULE 16b-3(d) DOES NOT EXEMPT THESE BACKDATED OPTION GRANTS BECAUSE THEY WERE NOT LEGITIMATE TRANSACTIONS

Defendants also argue that their misconduct
notwithstanding, they should have no liability because of
the exemptive provisions of SEC Rule 16b-3.  In essence,
they claim that even if the options that they received were
backdated and improperly issued, the exemption should still
apply.  Stated differently, defendants assert that the SEC
in its rulemaking provides an exemption for options even if
an insider fraudulently misrepresents the grant dates to
obtain an "in the money" grant at the expense of public
shareholders.  We show below that defendants are plainly
wrong.  Defendants' construction of the Rule not only is at
odds with the text of the Rule, it also completely ignores
the SEC's purposes underlying the Rule and the statutory
mandate of Section 16(b).

14

### A.   Rule 16b-3(d) Applies Only to Legitimate Transactions Made in the Ordinary Course of an Issuer's Business

Rule 16b-3(d) provides an exemption for certain transactions between an issuer and its officers and directors that meet certain objective "gate-keeping" criteria. SEC Rule 16b-3(d), in pertinent part, provides:

> *Acquisitions from the Issuer.* Any transaction, other than a Discretionary Transaction, involving an acquisition from the issuer (including without limitation a grant or award), whether or not intended for a compensatory or other particular purpose, shall be exempt if:
>
> (1) The transaction is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors;
>
> (2) The Transaction is approved or ratified, in compliance with section 14 of the Act, by … the holders of a majority of the securities of the issuer . . . ; or
>
> (3) The issuer equity securities so acquired are held by the officer or director for a period of six months following the date of such acquisition, provided that this condition shall be satisfied with respect to a derivative security if at least six months elapse from the date of acquisition of the derivative security to the date of disposition of the derivative security (other than upon exercises or conversion) or its underlying equity security.

17 C.F.R. § 240.16b-3(d).

Defendants do not rely on the Rule's exemption for proper board approval contained in 16(b)-3(d)(1). Instead, they rely on subsection (d)(3) to provide an exemption,

alleging that they held the options for periods of six
months following the dates of grant. But, in order for
defendants' argument to succeed, this Court must find that
the word "transaction" in the Rule applies to fraudulent or
"illegitimate" transactions, without regard to the SEC's
"gate keeping" criteria.   This was not the intent of the
SEC when it enacted the Rule or Congress when it enacted
the statute.

In *Dreiling* v. *American Express Co.*, 458 F.3d 954 (9th
Cir. 2006), the Ninth Circuit explored at some length the
purpose and effect of the Rule.  First, the Court analyzed
the purpose of the statute.

Congress enacted § 16(b) as part of the
Securities Exchange Act of 1934 to prevent
corporate insiders from exploiting their access
to "information not generally available to
others." *Kern County Land Co.* v. *Occidental
Petroleum Corp.*, 411 U.S. 582, 592, 93 S.Ct.
1736, 36 L.Ed.2d 503 (1973). Section 16(b) reads
in relevant part:

For the purpose of preventing the
unfair use of information which may have
been obtained by such beneficial owner,
director, or officer by reason of his
relationship to the issuer, any profit
realized by him from any purchase and sale
... of any equity security of such issuer
... within any period of less than six
months ... shall ... be recoverable by the
issuer, irrespective of any intention on the
part of such beneficial owner, director, or
officer in entering into such transaction of
holding the security.... *This subsection
shall not be construed to cover ... any*

16

> *transaction or transactions which the*
> *Commission by rules and regulations may*
> *exempt as not comprehended within the*
> *purpose of this subsection.*

15 U.S.C. § 78p(b) (emphasis added).

In passing the statute, "Congress recognized that short-swing speculation by stockholders with advance, inside information would threaten the goal of the Securities Exchange Act to 'insure the maintenance of fair and honest markets.' " *Kern County,* 411 U.S. at 591, 93 S.Ct. 1736 (quoting 15 U.S.C. § 78b). Section 16(b) flatly prohibits a "class of transactions in which the possibility of abuse was believed to be intolerably great," *id.* at 592, 93 S.Ct. 1736, and does so by "impos[ing] a strict prophylactic rule with respect to insider, short-swing trading." *Foremost-McKesson, Inc. v. Provident Sec. Co.,* 423 U.S. 232, 251, 96 S.Ct. 508, 46 L.Ed.2d 464 (1976). The statute identifies three classes of insiders--directors, officers and beneficial owners--and makes them liable, without fault or intended wrongdoing, for trading in their company's shares. 15 U.S.C. § 78p(b).

The Court went on to examine the purpose and effect of Rule 16b-3(d).

The SEC adopted the 1996 version of Rule 16b-3(d) as part of a number of amendments to Rule 16b-3 to present a "simplified, flexible approach" to insider transactions. Ownership Reports and Trading by Officers, Directors and Principal Security Holders, 61 Fed.Reg. 30,376, 30,377 (June 14, 1996)[the "1996 Adopting Release"]. . . . The SEC . . . concluded that short-swing transactions between an insider and an issuer that *"satisfy ... objective gate-keeping conditions[ ] are not vehicles for the speculative abuse that section 16(b) was designed to prevent." Id.* Thus, the SEC enacted Rule 16b-3(d) because board or shareholder-approved insider-issuer transactions were "not contemplated within the purpose" of § 16(b).

17

458 F.3d 942 at 948 (*emphasis added*).

The Court noted also that the objective gate-keeping functions would serve as a curb on insider abuse:

> After notice and comment, the SEC determined that board-approved transactions between an issuer and an insider were unlikely to result in speculative abuse, and that the risk of such abuse was therefore tolerable. As amicus curiae, the SEC adds that in considering Rule 16b-3(d), it found that insider-issuer transactions did not pose an intolerably great risk of abuse because "*[b]oard or shareholder approval will remove the timing of the acquisition from the control of any one insider and also tend to assure that the acquisition is for a legitimate corporate purpose.*" *See also Gryl v. Shire Pharm. Group PLC,* 298 F.3d 136, 145-46 (2d Cir.2002) (*emphasis added*).

*Dreiling v. American Exp. Co.,* 458 F.3d 942, 950 (9th Cir. 2006).

### 1.    The Regulatory History of Rule 16b-3(d) Demonstrates That It Was Concerned With Legitimate Issuer Transactions

The regulatory history of Rule 16b-3(d), as adopted in 1996, further supports the conclusion that it was concerned solely with issuer transactions with its corporate officers or directors which did not "present . . . opportunities for insider profit on the basis of non-public information" in furtherance of mandate of the statute. Ownership Reports and Trading by Officers, Directors and Principal Security Holders, 61 Fed.Reg. 30,376, 30,377 (June 14, 1996).

The statutory policies of Section 16(b) are designed to prevent speculative abuse by statutory insiders which results in harm to the securities markets and the national economy. *See, e.g., Gollust v. Mendel,* 501 U.S.115,121 (1991) (quoting 15 U.S.C. §78b). Section 16(b) embodies Congress' judgment that certain types of insider trading are so fraught with the risk of speculative abuse that, like horizontal price fixing, they are subject to a *per se* rule, i.e., they should not be allowed under any circumstances. *See, e.g., Foremost-McKesson, Inc.,* 423 U.S. at 253 ("Congress thought that *all* short-swing trading by directors and officers was vulnerable to abuse because of their intimate involvement in corporate affairs.") (*emphasis added*).

Rule 16b-3's extensive revision in 1991[2] included a rather complex and detailed set of rules governing the availability of the compensation-related exemption. Those revisions articulate quite clearly the problem that the rule was designed to address by stating that:

> Since many plans provide for grants or awards at least every 12 months, if there were no acquisition exemption, any sale of equity

---

[2]   *Ownership Reports and Trading by Officers, Directors, and Principal Security Holders*, Release Nos. 34-28869; 35-25254; IC-17991, 56 FR 7242 (Feb. 21. 1991 (the "1991 Adopting Release")

19

security by participating officers or directors would necessarily occur within six months before or after an acquisition, and therefore result in short-swing liability. *Rule 16b-3 is intended to provide relief from this frustration of the legitimate use of employee benefit plans as a method of executive compensation, where the nature of the transaction and the safeguard imposed by the rule minimize the potential for abuse.*

1991 Adopting Release, 56 FR at 81,266.

Similarly, the SEC's 1995 Release[3] also explained that the purpose of the alternative proposal, later adopted as the Rule, was to facilitate *legitimate transactions* between an issuer and its officers and directors. Thus, the 1995 Release stated:

> ... the Commission has sought to craft a rule that, consistent with the statutory purpose of Section 16(b), erects meaningful safeguards against the abuse of inside information by officers and directors *without impeding their participation in legitimate compensatory transactions* that do not present the possibility of such abuse, and facilitates compliance.

1995 Release, 60 FR at 53833 (emphasis added).

Finally, in the 1996 release with respect to Rule 16b-3, confirms that the concept of ordinary course legitimate transactions lay at the core of the regulatory changes to Rule 16b-3(d). In connection with the decision to insert the words "other acquisitions" the Adopting Release states:

---

[3] Ownership Reports and Trading by Officers, Directors and Principal Stockholders, Release No. 34-36356, 60 Fed. Reg. 53832, 53834 (Oct. 17, 1995)(the "1995 Adopting Release").

20

> [The] [p]urpose is to exempt some participant
> directed transactions (such as deferral of
> bonuses into phantom stock and other deferred
> **compensation programs)** that are exempt under the
> current rule but would lack the exemption under
> the new rule....

1996 Adopting Release, 61 FR at 30380 (*emphasis added*).

The SEC releases contemporaneous with the adoption of

Rule 16b-3(d) in 1996 never articulated an intention to

provide a blanket exemption for all acquisitions of

securities by a director from an issuer without regard to

their legitimacy. Nor does any such statement appear in

any of the SEC's releases discussing Rule 16b-3 dating back

to the first time such a rule was adopted and continuing

through 1991 when the previous form of the rule ultimately

refined in the current rule 16b-3(d) was first proposed

and then through its various incarnations in 1994, 1995 and

1996. To the contrary, the regulatory history is clear that

the SEC's intention was to create an exemption for certain

ordinary course transactions by issuer with its officers

and directors.

Thus, it is quite clear that the SEC did not intend

to exempt every issuer to insider transactions but only

those transactions which were legitimate exercises of

21

corporate will.[4] Defendants are plainly not entitled to
rely on an exemption under the facts alleged here.

### POINT III

### DEMAND SHOULD BE EXCUSED UNDER THE
### CIRCUMSTANCES PRESENTED HERE

Defendants also argue that the complaint should be
dismissed because Strauss did not make a demand upon
Affiliated to bring this suit. This argument too is without
merit.

Section 16(b) confers standing on an "owner of any
security of the issuer in the name and in behalf of the
issuer if the issuer shall fail or refuse to bring such
suit within sixty days after request or shall fail
diligently to prosecute the same thereafter . . . ."
The court has the discretion to excuse demand on the issuer
where demand would be futile or for other good reason, such

---

[4] The SEC has not had occasion to publicly interpret this
exemption in the context of the growing backdating of
options scandal. However, if asked, it is unlikely that the
SEC would sanction such conduct as a legitimate corporate
transaction entitled to the exemption. But in the unlikely
event that the SEC did read its regulations to permit an
exemption for these backdated grants, this interpretation
would not be entitled to deference because it flies in the
face of the purpose of both §16(b) and its own regulations.
*See, Director, Office of Workers Compensation v. Eastern
Associated Coal*, 54 F.3d 141, 146 (3d Cir. 1995("We look to
see whether the regulation harmonizes with the plain
language of the statute, its origin and its purpose".).

22

as the expiration of the statute of limitations prior to the end of the sixty-day period. *See, e.g, Morales v. McIntyre Porcupine Mines, Ltd.*, U.S. Dist. LEXIS 11539 (S.D.N.Y. October 17, 1972); *Morales v. Mylan Laboratories, Inc.*, 443 F. Supp. 778 (W.D. PA 1978); *Grossman v. Young*, 72 F.Supp. 375, 380 (S.D.N.Y. 1947); *Benisch v. Cameron*, 81 F. Supp. 882, 885 (S.D.N.Y. 1948). *See also, DiLorenzo* v. *Edgar*, 2004 WL 609374 (D. Del. 2004) (cancellation of shares prior to expiration of sixty-day period sufficient to excuse demand).

It must be noted that the traditional concepts of demand required for derivative actions under Fed. R. Civ. P. 23.1 ("Rule 23.1") do not apply to §16(b). Unlike in traditional derivative cases, the issuer does not have the ability to dismiss cases under the business judgment rule. *Pellegrino v. Nesbit*, 203 F.2d 463 (9th Cir. 1953); *DiLorenzo v. Edgar, supra,* citing *Cramer v. General Tel & Elec Corp.,* 582 F.2d 259, 276 (3d Cir. 1978). *In accord, Segen v. Comvest Venture Partners*, LP, 2005 WL 1320875 (D. Del. 2005). The purpose of demand in a §16(b) case is not to afford the issuer the opportunity to decide whether the litigation should go forward, but merely to allow the corporation to address the issue *before* allowing the shareholder to vindicate Congressional policy. *See, e.g,*

23

*Colan v. Monumental Corp.,* 524 F.Supp. 1023, 1027 (N.D.
Ill. 1981). It is simply a timing issue, allowing the
company to pursue the claim in the first instance, if it
intends to do so, but not foreclosing subsequent
shareholder suit. *See, Pellegrino v. Nesbit*, 203 F.2d 463,
467 (9th Cir. 1953); *Levy ex rel. Mktg. Servs. Group, Inc.
v. GE Capital Corp.*, 2001 U.S. Dist. LEXIS 13099 (S.D.N.Y.
2001), where the Court stated: "the congressional purpose
[is] to cause disgorgement of short-swing profits by
corporate insiders in favor of the corporation of which
they are fiduciaries, even when the corporation is
unwilling to prosecute such a suit and a derivative
plaintiff brings suit instead". *Id.* at 19.

## A.   Demand Would Have Been Futile

There is no question that Affiliated would not have
brought this lawsuit even had it received notice. The
motion practice in this case makes that fact abundantly
clear.[5]

---

[5] The complaint makes the following allegations concerning
demand:

> Plaintiff has not made demand on the Company to
> commence this action because such demand would be
> futile.   Defendants control the Company and its
> Board of Directors, and it is believed that they
> will not take action against their own interests.
> Moreover, prompt action is required to avoid a

24

This case was filed on May 16, 2006.  Obviously, had
Affiliated wished to pursue these claims, it could have
brought its own lawsuit at that time or moved to intervene
as a plaintiff in this case. *Silverman v. Re*, 194 F. Supp.
540 (S.D.N.Y. 1961). Had Affiliated chosen either of these
options, this Court could have allowed the issuer to pursue
the claims and stayed Strauss' lawsuit. Instead, Affiliated
elected to oppose the lawsuit and impede a recovery. The
law is clear that where demand is futile, it will be
excused. *Grossman v. Young,* 72 F.Supp. 375 (S.D.N.Y.1947);
*Netter v. Ashland Paper Mills, Inc.*, 19 F.R.D. 529
(S.D.N.Y. 1956); *Weissman v. Spector*, 158 F. Supp. 789
(S.D.N.Y. 1958).  The failure of Affiliated to bring this
action or intervene as a plaintiff makes it obvious that
demand would have been futile.[6] *See Grossman v. Young*,
*supra*, finding futility where the shareholder–plaintiff
sued before the sixty days had expired because, *inter alia*,
issuer failed to appear in the action demonstrating its
intent not to pursue the matter; *Berkwich v.Mencher,* 239
F.Supp. 792 (S.D.N.Y. 1965)(demand excused where
corporation announced it would not bring suit and refused

---

possible bar to the claims asserted herein under the
governing two year statute of limitations.   (¶ 17)

[6] Strauss wishes to advise the Court that he would welcome
Affiliated's participation as a plaintiff in this lawsuit.

shareholder-plaintiff's offer to relinquish control of the
lawsuit to the issuer).

It is obvious that dismissing this lawsuit for
failure to make a demand will not vindicate the policy of
the statute but only serve to undermine it.

## B. Demand Is Excused Because of Potential Statute of Limitations Issues

The law is clear that the Court may exercise its
discretion to excuse demand where the statute of
limitations may bar the claims. *See*, e.g., *Morales v. Mylan
Laboratories, Inc.*, 443 F. Supp. 778 (W.D. PA 1978);
*Benisch v. Cameron*, 81 F. Supp. 882, 885 (S.D.N.Y. 1948).
Although plaintiff believes that the tolling provisions of
*Whittaker v. Whittaker*, *supra* and *Litzler*, *supra*, should be
adopted by this Court, this Circuit has not definitively
adopted the tolling provisions of those two cases. Because
of this uncertainty, and because it was not plain from the
defendants' SEC filings when the §16(b) claims accrued,
plaintiff elected to file the complaint as soon as
practicable to avoid a possible limitations defense as to
either the claims pleaded or those that may be uncovered
during discovery.

Plaintiff submits that the failure to make demand in
this case is excused by the manifest disinterest of
Affiliated in suing its insiders as well as the possible

26

effect on the limitations issues had he waited an additional sixty days to bring suit.

## POINT VI

### LEAVE TO REPLEAD SHOULD BE GRANTED

Defendants' Rule 12(b)(6) claim should be denied in its entirety. However, in the event that the Court finds that the claims have not been sufficiently pled, plaintiff requests leave to amend to correct the deficiencies pursuant to Fed. R. Civ. P. 15. *Justofin v. Metor Life Ins. Co.,* 372 F.3d 517, 525 (3rd Cir. 2004) (leave to amend pleading freely granted); *Shane v. Fauver,* 213 F. 3d 113, 115 (3rd Cir. 2000)(same).

## Conclusion

The motions to dismiss should be denied.

Dated:    Wilmington, Delaware
          September 25, 2006

                              FERRY, JOSEPH & PEARCE, P.A.

                              Theodore J. Tacconelli (#2678)

                              824 Market Street
                              Suite 904
                              P.O. Box 1351
                              Wilmington, Delaware 19899
                              (302) 575-1555

                                    -and-

                              PAUL D. WEXLER, ESQ.
                              BRAGAR WEXLER & EAGEL, P.C.

                              885 Third Avenue
                              New York, New York 10022
                              (212) 308-5858

                                    -and-

                              GLENN F. OSTRAGER, ESQ.
                              OSTRAGER CHONG FLAHERTY
                               & BROITMAN P.C.

                              250 Park Avenue, Suite 825
                              New York, New York 10177-0899
                              (212) 681-0600

                              Attorneys for Plaintiff

28

## CERTIFICATE OF SERVICE

I, Theodore J. Tacconelli, hereby certify that on September 25, 2006, a copy of the foregoing Memorandum of Law In Opposition to Motions To Dismiss was served electronically by CM/ECF and by hand delivery upon the following counsel of record:

Edward P. Welch, Esquire
Edward B. Micheletti, Esquire
Nicole A. DiSalvo, Esquire
SKADDEN, ARPRS, SLATE, MEAGHER
& FLOM LLP
One Rodney Square
Wilmington, DE 19801

Allen M. Terrell, Esquire
Harry Tashjian, IV, Esquire
RICHARDS, LAYTON & FINGER
One Rodney Square
Wilmington, DE 19801

/s/ Theodore J. Tacconelli
FERRY, JOSEPH & PEARCE, P.A.
824 Market Street, Suite 904
Wilmington, DE 19801
(302) 575-1555
ttacconelli@ferryjoseph.com