## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JEFFREY T. STRAUSS, derivatively on behalf of AFFILIATED COMPUTER SERVICES, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 06-318-SLR |
| JEFFREY A. RICH, MARK A. KING, and AFFILIATED COMPUTER SERVICES, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS JEFFREY A. RICH AND MARK A. KING'S
## OPENING BRIEF IN SUPPORT OF THEIR MOTION TO TRANSFER OR, IN THE
## ALTERNATIVE, MOTION TO STAY

OF COUNSEL:

William B. Dawson
Karen L. Hirschman
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel: (214) 220-7700
Fax: (214) 220-7716
*Counsel for Defendant Jeffrey A. Rich*

Karen Patton Seymour
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel: (212) 558-4000
Fax: (212) 558-3588
*Counsel for Defendant Mark A. King*

Dated: April 24, 2007

Allen M. Terrell (#709)
*Terrell@rlf.com*
Harry Tashjian, IV (#4609)
*Tashjian@rlf.com*
RICHARDS, LAYTON AND FINGER, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899-0551
Tel: (302) 651-7700
Fax: (302) 651-7701
*Attorneys for Defendants Jeffrey A. Rich and Mark A. King*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS AND BRIEF OVERVIEW ........................ 1

SUMMARY OF ARGUMENT ........................................................................................ 2

STATEMENT OF FACTS .............................................................................................. 3

ARGUMENT ............................................................................................................... 5

    I.      THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN
           DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a) ............................ 5

           A.    This Action Could Have Been Brought in the Northern District of
               Texas ............................................................................................... 5

           B.    The Private and Public Interests Identified by the Third Circuit
               Weigh Strongly in Favor of Transferring the Case ................................. 5

               1.      The Public Interests Weigh Strongly in Favor of
                     Transferring this Action ........................................................... 8

               2.      The Private Interests Weigh Strongly in Favor of
                     Transferring this Action ......................................................... 12

    II.     ALTERNATIVELY, THIS ACTION SHOULD BE STAYED PENDING
           THE OUTCOME OF THE TEXAS FEDERAL CONSOLIDATED
           ACTION ......................................................................................... 15

CONCLUSION ......................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Abbott Diabetes Care, Inc. v. Dexcom, Inc.,*
   C.A. No. 05-590-GMS, 2006 WL 2375035 (D. Del. Aug. 16, 2006) ..................................... 15

*Affymetrix, Incorporated v. Synteni, Incorporated,*
   28 F. Supp. 2d 192 (D. Del. 1998).................................................................................... 6, 13

*Alexander v. Franklin Res., Inc.,*
   C.A. No. 06-7121-SI, 2007 WL 51889 (N.D. Cal. Feb. 14, 2007)............................................ 8

*In re Amendt,*
   169 Fed. Appx. 93 (3d Cir. 2006) ........................................................................................... 9

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.,*
   295 F. Supp. 2d 393 (D. Del. 2002)..................................................................................... 12

*Arrow Communication Labs., Inc. v. John Mezzalingua Assocs., Inc.,*
   C.A. No. 05-357-SLR, 2005 WL 2786691 (D. Del. Oct. 26, 2005)........................................ 10

*Banco Nominees Limited v. Iroquois Brands, Limited,*
   748 F. Supp. 1070 (D. Del. 1990)................................................................................... 11, 12

*Bayer Bioscience N.V. v. Monsanto Co.,*
   C.A. No. 03-023-GMS, 2003 WL 1565864 (D. Del. Mar. 25, 2003) ....................................... 8

*Bosco v. Scott,*
   C.A. No. 00-211-GMS, 2000 WL 1728150 (D. Del. Aug. 31, 2000) ..................................... 14

*Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.,*
   C.A. No. 01-199-SLR, 2001 U.S. Dist. LEXIS 20803 (D. Del. Nov. 28, 2001 .................... 13

*Hall v. Kittay,*
   396 F. Supp. 261 (D. Del. 1975)......................................................................................... 8, 9

*IKOS Sys., Inc. v. Axis Sys., Inc.,*
   C.A. No 01-74-JJF, slip op. at 5 (D. Del. Sept. 18, 2001)..................................................... 12

*Jacobs v. Tenney,*
   316 F. Supp. 151 (D. Del. 1970)............................................................................................. 8

*Jumara v. State Farm Ins. Co.,*
   55 F.3d 873 (3d Cir. 1995).................................................................................................. 5, 6

*Memminger v. Infocure Corp.,*
   C.A. No. 00-707-JJF, 2000 U.S. Dist. LEXIS 22077 (D. Del. Nov. 14, 2000)..................... 14

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.,*
   77 F. Supp. 2d 505 (D. Del. 1999)...................................................................................... 14

*Nilssen v. OSRAM Sylvania, Inc.,*
   C.A. No. 00-695-JJF, 2001 WL 34368395 (D. Del May 1, 2001) ................................... 10, 14

ii

*Oracle Corp. v. Epicrealm Licensing, L.P.,*
    C.A. No. 06-414-SLR, 2007 U.S. Dist. LEXIS 21095 (D. Del. Mar. 26, 2007) ..................... 13

*Stratos Lightwave, Inc. v. Picolight, Inc.,*
    C.A. No. 03-917-JJF, 2005 WL 681308 (D. Del. Mar. 23, 2005) ................................. 15, 16

*Sumito Mitsubishi Silicon Corp. v. MEMC Elec. Materials, Inc.,*
    C.A. No. 04-852-SLR, 2005 U.S. Dist. LEXIS 5174 (D. Del. Mar. 30, 2005) ...................... 9

*Texaco, Inc. v. Borda,*
    383 F.2d 607 (3d Cir. 1967) ........................................................................................... 15

*Tracy v. Consol. Rail Corp.,*
    723 F. Supp. 1051 (D. Del. 1989) .................................................................................... 9

*U.S. v. Ismaili,*
    828 F.2d 153 (3d Cir. 1987) ........................................................................................... 14

*Virgin Wireless, Inc. v. Virgin Enters. Ltd.,*
    F. Supp. 2d 294 (D. Del. 2002) .............................................................................. 5, 9, 10

*Weisler v. Barrows,*
    C.A. No. 06-362-GMS, 2006 WL 3201882 (D. Del. Nov. 6, 2006) ............................. *passim*

## STATUTES

28 U.S.C. § 1391 ...................................................................................................................... 5

28 U.S.C. § 1404 ............................................................................................................. *passim*

## NATURE AND STAGE OF THE PROCEEDINGS AND BRIEF OVERVIEW

On May 16, 2006, Plaintiff Jeffrey T. Strauss ("Plaintiff") filed a six-page Complaint in this action (the "Action") purporting to act on behalf of Affiliated Computer Services, Incorporated ("ACS"). This Action revolves entirely around allegations of stock option backdating at ACS. The Complaint asserts only one cause of action, alleging that Defendants Jeffrey A. Rich ("Rich") and Mark A. King ("King") garnered short-swing profits in violation of Section 16(b) of the Securities Exchange Act of 1934.

Defendants face a multiplicity of lawsuits relating to alleged stock option backdating at ACS. Nine other cases have been filed against these defendants and others,[1] asserting up to fourteen different causes of action, based on the very same allegations. Through transfer and consolidation, five cases are now pending: this one, one in Delaware Chancery Court, one in Texas state court, and two in Federal Court in the Northern District of Texas.[2]

Pursuant to 28 U.S.C. § 1404(a), Rich and King (together, the "Individual Defendants") move to transfer this Delaware Federal Action to the United States District Court for the Northern District of Texas for consolidation with the action pending in that court (the "Texas Federal Consolidated Action"). The Texas Federal Consolidated Action is also brought derivatively on behalf of ACS and asserts a Section 16(b) claim identical to the one in this case, as well as thirteen additional causes of action. Transfer of this case will advance the interests of justice and be more convenient, expeditious, and less expensive for the parties, the witnesses, and the courts.

---

[1] Joseph P. O'Neill, Frank A. Rossi, Darwin Deason, Lynn Blodgett, J. Livingston Kosberg, Dennis McCuistion, Warren Edwards, John Rexford, and John M. Brophy.

[2] These other cases are: (1) *Brandin v. Deason, et al.*, Civil Action No. 2123-N (Del. Ch.); (2) *In re Affiliated Computer Servs., Inc. Derivative Litig.*, Cause No. 06-03403 (Dallas County, Tex., 193rd Judicial District); (3) *In re Affiliated Computer Servs. Derivative Litig.*, Master File No. 3:06-CV-1110-M (N.D. Tex.) (the "Texas Federal Consolidated Action"); and (4) *In re Affiliated Computer Servs. ERISA Litig.*, Master File 3:06-cv-1592 (N.D. Tex.) (the "ERISA Action"). The Texas Federal Consolidated Action and the ERISA Action are pending before the same United States District Judge, Barbara M.G. Lynn.

Alternatively, the Individual Defendants ask this Court to stay these proceedings pending the outcome of the Texas Federal Consolidated Action in order to avoid relitigating the same claims, eliminate the risk of inconsistent rulings and judgments and prevent impermissible claim splitting.

Pursuant to District of Delaware Local Rule 7.1.1, counsel for King and Rich conferred with counsel for the plaintiff and were unable to reach agreement as to the matters set forth herein.

## SUMMARY OF ARGUMENT

1.    This Delaware Federal Action should be transferred to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) for consolidation with the Texas Federal Consolidated Action. The Northern District of Texas is a venue in which the present action might have been brought (and indeed, in which a more comprehensive consolidated action involving the same parties and the same operative facts is pending), and the interests of justice and the convenience of the parties, the witnesses, and the courts favor a transfer to the Northern District of Texas.

2.    Alternatively, should the Individual Defendants' Motion to Transfer be denied, then this Court should exercise its discretion to stay this Action pending the outcome of the Texas Federal Consolidated Action to avoid unnecessary duplicative proceedings and possible inconsistent and/or duplicative rulings between this Court, the Texas Federal Consolidated Action, and the other three derivative actions brought on behalf of ACS.

2

## STATEMENT OF FACTS

Plaintiff, a New York resident, alleges that he owns Class A common stock of ACS. (Compl. ¶ 1). Defendant Rich, a resident of Texas, is a former chief executive officer and a former director of ACS. (Compl. ¶ 3). Rich resigned from ACS and the board of directors in September 2005. *Id.* Defendant King, also a resident of Texas, is a former president, chief executive officer, and director of ACS. (Compl. ¶ 4). King resigned from ACS and the board of directors in November 2006. *Id.* Nominal Defendant ACS, a Delaware corporation with its principal place of business and headquarters in Dallas, Texas, is a provider of information technology and business process outsourcing. ACS's day-to-day business operations occur in Dallas, Texas.

The Complaint challenges stock option grants to Rich that took place on July 11, 2000 and July 23, 2002, and a stock option grant to King that took place on July 23, 2002 (the "Challenged Grants"). (Compl. ¶ 8). Plaintiff alleges that the Challenged Grants were improperly backdated. *Id.* The Complaint contends that because Rich and King sold shares of ACS stock within six months of receiving the allegedly backdated stock option grants, they received "short-swing profits" in violation of Section 16(b) of the Exchange Act. (Compl. ¶ 10). The Section 16(b) claim is the only claim brought by Plaintiff in this case.

The stock option practices of ACS have generated a number of lawsuits, all purportedly brought on behalf of the company. At present, Rich and King are being sued in five different derivative actions pending in Delaware and Texas state and federal courts, including three consolidated actions. The Texas Federal Consolidated Action is a consolidated derivative action encompassing the complaints filed in *Alaska Electrical Fund v. Rich*, Cause No. 3:06-cv-1110-M (N.D. Tex.), and *Lunceford v. Rich*, Cause No. 3:06-cv-1212-M (N.D. Tex.). In addition to thirteen other causes of action, the Texas Federal Consolidated Action includes the same Section 16(b)

3

claim Plaintiff raises here.[3]    The consolidated derivative complaint in the Texas Federal Consolidated Action is attached to the Transmittal Affidavit of Harry Tashjian, IV, as Exhibit A.

The parties unsuccessfully mediated the Texas Federal Consolidated Action on March 6, 2007.  The Defendants are due to respond to the amended consolidated complaint in the Texas Federal Consolidated Action on or before May 21, 2007.

---

[3] The Texas Federal Consolidated Action pleads fourteen counts against, among others, the Individual Defendants, including violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, violations of Section 14(b) of the Exchange Act, violations of Section 20(a) of the Exchange Act, violations of Section 16(b) of the Exchange Act, breaches of fiduciary duties, aiding and abetting breaches of fiduciary duties, abuse of control, gross mismanagement, constructive fraud, corporate waste, unjust enrichment, rescission, breach of contract, and a claim for an accounting.  These alleged claims arise out of ACS's granting of stock options between 1995 and 2002, specifically including the Challenged Grants.

## ARGUMENT

I.     **THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a).**

28 U.S.C. § 1404(a) governs the transfer of a case from one federal district court to another: "For the convenience of parties and witness, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When considering a motion to transfer, the court must determine "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (quoting 15 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FED. PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 3847 (2d ed. 1986)).

A.     **This Action Could Have Been Brought in the Northern District of Texas.**

The threshold question for a motion to transfer under Section 1404(a) is whether the action could have been brought in the transferee court. *See Virgin Wireless, Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d 294, 299-300 (D. Del. 2002). Here, there can be no dispute that this Action could have been brought in the United States District Court for the Northern District of Texas: (1) ACS's headquarters and principal place of business is in Dallas, Texas; (2) the Individual Defendants are each residents of Texas; and (3) the alleged conduct in the Complaint took place in Dallas, Texas. *See* 28 U.S.C. § 1391(b)(1)-(2). Indeed, there are two consolidated derivative actions currently pending in the Northern District of Texas – both of which arise out of the same operative facts complained of here.

B.     **The Private and Public Interests Identified by the Third Circuit Weigh Strongly in Favor of Transferring the Case.**

A case may be transferred to a different federal district if such a transfer (i) is convenient for the parties and witnesses and (ii) serves the interests of justice. 28 U.S.C. § 1404(a); *see Virgin*

5

*Wireless,* 201 F. Supp. 2d at 299. "Although emphasizing that 'there is no definitive formula or list of factors to consider,'" the Third Circuit has identified several private and public interests to review when determining whether to transfer a case. *Id.* at 300 (citing *Jumara*, 55 F.3d at 879).

The public interests identified by the Third Circuit in *Jumara* are: (1) the practical considerations that could make the trial easy, expeditious, or inexpensive; (2) the enforceability of the judgment; (3) the relative administrative difficulty resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at *14.

The private interest factors considered are: (1) the plaintiff's forum preference; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).[4] *Id.*

Judge Sleet's recent decision in *Weisler v. Barrows*, C.A. No. 06-362-GMS, 2006 WL 3201882 (D. Del. Nov. 6, 2006), balanced these public and private issues in a decision transferring a derivative action involving backdating allegations to another district where a similar action was pending. In *Weisler*, a stockholder brought a derivative action against various directors and officers of Sycamore Networks, a Delaware corporation, complaining of alleged option backdating at the company. *Id.* at *1. Like here, there were several other derivative actions filed on behalf of the

---

[4] Courts in this district have followed *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 197-202 (D. Del. 1998), noting that the first three private factors result in double counting, if, as the statutory language specifies, the court must balance the convenience of parties and witnesses. Accordingly, those three factors are not explicitly considered.

6

company, including one in Massachusetts, where Sycamore Networks is headquartered. *Id.* at *3.

The Court granted the defendants' motion to transfer to Delaware under Section 1404(a):

> The present suit is one of four federal actions commenced in three
> different districts based upon substantially the same transactions and
> occurrences. As previously mentioned, Sycamore is principally based
> in Massachusetts. As a result, many of the witnesses with knowledge
> of the events giving rise to this lawsuit are located there. . . .
> Additionally, [the derivative plaintiff] is a New York resident, and
> none of the defendants are Delaware residents. Moreover, in a
> shareholder's derivative suit, a plaintiff's choice of forum is entitled
> to little weight. . . . Further, there is little connection between
> Delaware and this action. In fact, the only connection that Weisler
> points to [is] the fact that Sycamore is incorporated in Delaware. . . .
> On the other hand, Massachusetts is Sycamore's principal place of
> business, and all aspects of its day-to-day business occur in
> Chelmsford, Massachusetts. . . . Thus, the locus of the operative facts
> appears to be Massachusetts. . . . There are two shareholder
> derivative actions currently pending in the District of Massachusetts,
> which are based on the same facts and circumstances as the present
> case. The plaintiffs have moved to consolidate those cases and any
> subsequently filed shareholder derivative actions because they
> "involve common questions of law and fact concerning the
> defendants' alleged breaches of fiduciary duties, statutory violations,
> and other violations of law." . . . Transferring the present case will
> permit the Massachusetts court to consolidate all actions with one
> lead plaintiff and lead counsel, thereby eliminating some of the
> expense for individual plaintiffs. Where related lawsuits exist, "it is
> in the interests of justice to permit suits involving the same parties
> and issues to proceed before one court."

*Id.* at *3-4 (internal citations and footnotes omitted).

For these same reasons, and under the same standards articulated by the Third Circuit, the

balancing of the public and private interests weighs in favor of transferring this case to the Northern

District of Texas for consolidation with the Texas Federal Consolidated Action.

1. **The Public Interests Weigh Strongly in Favor of Transferring this Action.**

    a. **Duplicitous Litigation**

There can be little doubt that this case presents the same issues in adjudicating Plaintiff's Section 16(b) claims that will confront Judge Lynn in the Texas Federal Consolidated Action. Both courts will undoubtedly be presented with similar discovery issues and motion practice, and both courts will ultimately be called upon to decide the merits of the Section 16(b) claim brought on behalf of ACS. If this Motion is not granted, Rich and King will be forced to defend themselves against these duplicative claims in two courts, thousands of miles apart, and will face the risk of potentially inconsistent rulings and judgments.

Because of the duplication of issues and the possibility of inconsistent rulings and judgments, courts routinely transfer derivative actions to other jurisdictions where similar derivative actions are pending. *See, e.g., Weisler*, 2006 WL 3201882, at *3 (explaining in the context of this derivative action that "[w]here related lawsuits exist, 'it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court.'") (quoting *Liggett Group Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 537 (D.N.J. 2000)); *Alexander v. Franklin Res., Inc.*, C.A. No. 06-7121-SI, 2007 WL 518859, at *4 (N.D. Cal. Feb. 14, 2007) (transferring derivative case to another district with a substantially similar derivative case).[5]

In *Jacobs v. Tenney*, 316 F. Supp. 151, 168 (D. Del. 1970), a stockholder brought a derivative lawsuit on behalf of Omega Equities Corporation ("Omega"), a Delaware corporation, for allegedly wrongful conduct occurring as a result of Omega's expansion of its business. *Id.* at

---

[5] The rule applies to duplicative litigation in the non-derivative context as well. *See, e.g., Hall v. Kittay*, 396 F. Supp. 261, 264 (D. Del. 1975) (transferring class action from Delaware to Southern District of New York, where another class action involving similar facts was pending); *Bayer Bioscience N.V. v. Monsanto Co.*, C.A. No. 03-023-GMS, 2003 WL 1565864, at *2 (D. Del. Mar. 25, 2003) (transferring a case to Missouri for travel and convenience reasons where related issues were being litigated).

RLF1-3142871-1

154. The Delaware suit was "one of ten separate federal actions commenced in three different districts based upon substantially the same transactions and occurrences," with seven of those cases being filed in and consolidated by the Southern District of New York. *Id.* at 167. In granting the defendants' motion to transfer to the Southern District of New York, the *Jacobs* Court held that the private interest factors were, at a minimum, equally balanced, but the interest of justice factors heavily favored a transfer. *Id.* at 168-69. In ordering the transfer, the Court explained the "strong policy favoring the litigation of substantially similar claims in the same tribunal in order that . . . duplicitous litigation can be avoided . . . and inconsistent results can be avoided."[6] *Id.* at 169. Similarly, in *Hall*, 396 F. Supp. at 264 , the Court held that the interest of justice factors strongly favored a transfer to New York where a substantially similar lawsuit was pending, because the transfer would result in a reduction of litigation costs, allow easier access to documents, ensure live testimony by third-party witnesses, conserve judicial resources, and avoid overlapping and competing litigation involving the same claims.

Allowing two cases addressing identical claims to proceed at the same time increases the possibility of conflicting findings of fact or inconsistent judgments.[7] Such conflict could impact the

---

[6] Other Delaware and Third Circuit cases have also held that the public interest factors strongly favor the transferring of a case under similar circumstances as presented to this Court. *See Virgin Wireless*, 201 F. Supp. 2d at 300 (holding that "[i]t would be a waste of judicial resources to allow both suits to progress in parallel," when discussing a New York action predicated on the same transaction and occurrences and involving many of the same parties); *see also Sumito Mitsubishi Silicon Corp. v. MEMC Elec. Materials, Inc*, C.A. No. 04-852-SLR, 2005 U.S. Dist. LEXIS 5174, at *9-10 (D. Del. Mar. 30, 2005) (transferring a patent suit to the Northern District of California, where a case involving a very similar patent suit was pending, in the interests of judicial economy and to avoid inconsistent rulings); *Tracy v. Consol. Rail Corp* , 723 F. Supp. 1051, 1052 (D. Del. 1989) (holding that "it would not be in the interest of justice for both the District of Delaware and the Eastern District of Pennsylvania to decide the same legal issues between the same parties based on the same factual circumstances"); *In re Amendt*, 169 Fed. Appx. 93, 96 (3d Cir. 2006) (non-precedential) ("[T]he most important factor is the avoidance of duplicative litigation: Adjudicating almost identical issues in separate fora would waste judicial resources.").

[7] As just one example, if a transfer or stay is denied, this Court must soon decide whether and under what circumstances the report of ACS's special committee can be produced. This precise issue will also be

enforceability of either judgment. *See Nilssen v. OSRAM Sylvania, Inc.*, C.A. No. 00-695-JJF, 2001 WL 34368395, at *4 n.10 (D. Del May 1, 2001) ("If *Markman* rulings are issued in the instant case that conflict with those rendered in the Northern District of Illinois prior to collateral estoppel becoming applicable, this could result in inconsistent judgments virtually guaranteeing that one of the judgments will get reversed on appeal. This judicial waste can be avoided by granting the instant motion to transfer."). The possibility of irreconcilable judgments is another reason why it is appropriate for the Section 16(b) claims to proceed in only one jurisdiction.

The considerations identified by these Delaware cases apply with the same force here.[8] This Action is a narrow action that challenges the validity, under Section 16(b) of the Exchange Act, of three discrete stock option grants. In contrast, the Texas Federal Consolidated Action is a much more comprehensive action challenging twelve stock option grants between 1995 and 2002, including the Challenged Grants, under at least fourteen different legal theories. Additionally, the Texas Federal Consolidated Action names nineteen defendants, including the defendants in this Action.

This Court should transfer this Action so that Rich, King, and ACS do not have to litigate the same issues in two different forums, to conserve judicial resources by having only one court rule

---

presented to the judge in the Texas Federal Consolidated Action (just as it will be presented to Vice Chancellor Lamb in the Delaware Chancery Action).

[8] The Texas Federal Consolidated Action was filed a few months after this Action. In some cases, the first-filed rule dictates that the action filed first should not transfer to a court with a later filed claim. But the Third Circuit "notes that the first-filed rule 'is not a rigid or inflexible rule to be mechanically applied.'" *Virgin Wireless*, 201 F. Supp. 2d at 300 (quoting *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 976 (3d Cir. 1988)). The first-filed "rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *Id.* (quoting *E.E.O.C.*, 850 F.2d at 977). The Court in *Virgin Wireless* held that the Delaware case, which had been filed first, should nevertheless be transferred, explaining that the considerations of judicial economy were particularly persuasive. *Id.* at 300; *see also Weisler*, 2006 WL 3201882, at *3 (involving the transfer of a first-filed Delaware case with no discussion of the first-filed rule); *Arrow Commc'n Labs., Inc. v. John Mezzalingua Assocs., Inc.*, C.A. No. 05-357-SLR, 2005 WL 2786691, at * 3 (D. Del. Oct. 26, 2005) (finding the first-filed rule did not apply because evidence suggested that Delaware had no connection to the subject matter of the suit, the parties, or the witnesses, except for the fact that the defendant was incorporated in Delaware).

10

on the myriad issues that will arise in both cases, and to eliminate the possibility of inconsistent rulings and judgments by the courts.

### b.      Docket Considerations

Another reason in favor of transferring this case to Texas is that there is a lighter docket in the Texas court. As of September 30, 2006, the median time periods to civil disposition and trial in Delaware were 16.8 and 26.0 months, respectively.  U.S. District Court – Judicial Caseload Profile, http://www.uscourts.gov/cgi-bin/cmsd2006.pl (last visited April 21, 2007; relevant pages are attached to the Transmittal Affidavit of Harry Tashjian, IV, as Exhibit B).  In the Northern District of Texas, these time periods were 7.4 months and 20.0 months, respectively.  *Id*  As of September 30, 2006, the percentage of cases over three years old in Delaware and Texas was 10.6% and 4.3%, respectively. *Id*

In addition, as the Court is aware, there is at present a vacancy on the federal bench in the District of Delaware.  This vacant judgeship has increased the relative workload of the remaining three judges, who are obliged to hear a disproportionate number of time-sensitive matters.  This factor supports transfer of this Action.

### c.      Local Interests

Even though ACS is incorporated in Delaware, this jurisdiction has only a minimal interest in deciding the controversy.  This case involves only the interpretation of a federal statute, which Judge Lynn is certainly quite capable of handling, and not Delaware corporate law or corporate governance issues.

The District Court in Texas has a far greater interest in deciding this controversy because ACS's headquarters and principal place of business are located in Texas, the Individual Defendants are located in Texas, and all of the operative facts alleged in the Complaint occurred in Texas. Similar facts were at issue in *Banco Nominees Ltd  v  Iroquois Brands, Ltd* , 748 F. Supp. 1070,

11

1076-77 (D. Del. 1990), in which the plaintiff argued, in opposition to a motion to transfer, that Delaware had a strong interest in ensuring its corporations adhere to their legal obligations. In *Banco*, the Court recognized Delaware's interest, but concluded that Delaware's interest was "greatly outweighed" by the other forum's interest in resolving a dispute between entities within its borders and where all the relevant facts occurred. *Banco*, 748 F. Supp. at 1077; *see also IKOS Sys., Inc. v. Axis Sys., Inc.*, C.A. No. 01-74-JJF, slip op. at 5 (D. Del. Sept. 18, 2001) ("the Court finds that Delaware does not have a strong interest in resolving this lawsuit because none of the events giving rise to this action occurred in Delaware") (attached hereto at Tab 1).

###### 2.     The Private Interests Weigh Strongly in Favor of Transferring this Action.

The private interest factors also weigh in favor of a transfer to the Northern District of Texas.

###### a.     Convenience of the Parties

Delaware is an inconvenient forum for all parties to this suit. The only presence that any of the parties have in Delaware is that ACS is incorporated in Delaware, and incorporation alone should not prevent transfer. *APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 398-99 (D. Del. 2002) ("Where an alternative forum is more convenient and has more substantial connections with the litigation incorporation in Delaware will not prevent transfer.") (quotation omitted). Plaintiff is located in New York State and the other parties reside in Texas. Moreover, transferring this Action to Texas will allow the Texas Court to consolidate the action with one lead plaintiff and one lead counsel, reducing the expense for the remaining individual plaintiffs.

Additionally, due to the nature of this case, a number of ACS's employees and officers will be asked to testify. In its Pre-Discovery Disclosures made pursuant to Federal Rule of Civil Procedure 26(a), ACS identifies seven individuals currently affiliated with ACS, who all live in

12

Texas, who have discoverable information about Plaintiff's Section 16(b) claim. *See* Exhibit C to the Transmittal Affidavit of Harry Tashjian, IV. If this case proceeds in Delaware, then these employees will have to testify in Delaware, subjecting ACS to the expenses of travel for each of these witnesses. ACS's business operations may be affected because these employees and officers will have to be away from Dallas for a number of days in order to be available to testify. These same employees and officers will still have to testify in the Texas Federal Consolidated Action. Having these employees and officers testify twice about the same facts is an unnecessary and duplicative cost. The expense and disruption to ACS's operations can be reduced by transferring this case.

Also, the Individual Defendants are individuals, not multi-million dollar corporations, and will bear significant expense in traveling to Delaware for trial. The Individual Defendants are no longer employees of ACS. Texas is more convenient for ACS and the Individual Defendants and no less convenient for Plaintiff than Delaware.[9]

### b.    Plaintiff's Forum Choice

Plaintiff's decision to bring this suit in Delaware should be granted limited deference in this case. "[I]n a shareholder's derivative suit, a plaintiff's choice of forum is entitled to little weight." *Weisler*, 2006 WL 3201882, at *3. This is especially true given the lack of nexus between Delaware and the Plaintiff or this Action. *Affymetrix*, 28 F. Supp. 2d at 199 ("the weaker the connection between the forum and *either* the plaintiff *or* the lawsuit, the greater the ability of a

---

[9] This Court's opinions in cases denying a defendant's motion to transfer are distinguishable. None of these opinions involved a substantially similar derivative case filed in another forum, and the majority of these opinions do not even involve a situation in which another case is pending in another federal district court. For example, in *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, C.A. No. 01-199-SLR, 2001 U.S. Dist. LEXIS 20803 (D. Del. Nov. 28, 2001), this Court found that the other litigation involved different underlying facts and different parties. Similarly, and unlike here, in *Oracle Corp. v. Epicrealm Licensing, L.P.*, C.A. No. 06-414-SLR, 2007 U.S. Dist. LEXIS 21095 (D. Del. Mar. 26, 2007), the other case was near completion and, thus, judicial economy would not be served by a transfer to another forum.

defendant to show sufficient inconvenience to warrant transfer"); *Bosco v. Scott*, No. 00-211-GMS, 2000 WL 1728150, at *1 (D. Del. Aug. 31, 2000) (transferring a derivative action where there was little to no connection between the action and the forum).

### c.    Convenience of the Witnesses

The "convenience of the witnesses" factor considers the availability of non-party fact witnesses who possess firsthand knowledge of the events giving rise to a lawsuit. *Memminger v. Infocure Corp.*, C.A. No. 00-707-JJF, 2000 U.S. Dist. LEXIS 22077, at *12-13 (D. Del. Nov. 14, 2000); *see also Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 510 (D. Del. 1999). In the derivative context, this Court has recognized that when a stockholder chooses to bring a derivative action in a forum far from the company it purports to sue on behalf of, the witnesses with knowledge of the disputed events are likely not subject to compulsory process in Delaware. *See Weisler*, 2006 WL 3201882, at *3 (transferring a derivative action and recognizing that "Sycamore is principally based in Massachusetts. As a result, many of the witnesses with knowledge of the events giving rise to this lawsuit are located there."); *Bosco*, 2000 WL 1728150, at *4 ("On the other hand, the majority of the events giving rise to this action occurred in North Carolina, which is the location of the principal offices of PhyAmerica and, as a result, the location of many of the witnesses. These factors weigh heavily in the court's transfer analysis.").

As this Court has noted, although these witnesses could be deposed, this is not equivalent to witnesses being subject to compulsory process in Delaware. *See Memminger*, 2000 U.S. Dist. LEXIS 22077, at *13 (citing *U.S. v. Ismaili*, 828 F.2d 153, 171 (3d Cir. 1987) (recognizing the difference between a witness being subject to the court's subpoena power and her availability for purposes of deposition)). This court has explained that "[a] party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to court's subpoena power." *Nilssen*, 2001 WL 34368395, at *2. In

14

light of the location in Texas of important non-party fact witnesses who would not be subject to compulsory process in Delaware and the absence of any known witnesses in Delaware, this factor also weighs strongly in favor of a transfer to Texas.

### d.    Location of Books and Records

The location of books and records factor also weighs in favor of transfer, as virtually all relevant documents are in the possession of ACS, which is principally located in Dallas, Texas, and Defendants are unaware of any books or records relevant to this Action that are maintained in Delaware.

## II.    ALTERNATIVELY, THIS ACTION SHOULD BE STAYED PENDING THE OUTCOME OF THE TEXAS FEDERAL CONSOLIDATED ACTION.

If this Court declines to transfer the case under 28 U.S.C. § 1404(a), then a stay of this proceeding is warranted to avoid the duplication of litigation and the risk of inconsistent judgments. "The decision to stay a case is firmly within the discretion of the court." *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, C.A. No. 05-590-GMS, 2006 WL 2375035, at *5 (D. Del. Aug. 16, 2006); *see also Stratos Lightwave, Inc. v. Picolight, Inc.*, C.A. No. 03-917-JJF, 2005 WL 681308, at *1 (D. Del. Mar. 23, 2005) ("A court has the inherent power to stay an action in the interests of efficient and fair resolution of the disputed issues.") (citing *Texaco, Inc. v. Borda*, 383 F.2d 607, 608 (3d Cir. 1967)). When determining whether to stay an action, the court's discretion is guided by: (1) whether the stay would unduly prejudice the non-moving party; (2) whether the stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete or the trial date is set. *Abbott Diabetes*, 2006 WL 2375035, at *5.

First, granting a stay here would not prejudice the Plaintiff because all of the issues alleged in the Complaint will still be adjudicated in the Texas Federal Consolidated Action. As a derivative plaintiff, Mr. Strauss's interest will be represented by the plaintiffs in the Texas Federal

Consolidated Action.  Second, a stay would allow for the Texas Court to adjudicate the issues presented in this case and would avoid impermissible claim splitting and the potential for inconsistent judgments.[10]  Thus, a stay of this Action would eliminate the possibility of inconsistent judgments that may later be determined to be unenforceable.  Finally, no scheduling order has been issued in this case and no discovery other than initial disclosures has occurred.

If this Court is declines to transfer this case, Defendants respectfully request that it should stay this Action in order to allow the more comprehensive Texas Federal Consolidated Action to proceed and thus avoid the possibility of inconsistent rulings and judgments issued by the two district courts.

---

[10] The multiplicity of lawsuits filed in Delaware and Texas state and federal courts regarding the alleged backdating of stock option grant dates by ACS and its officers results in impermissible claim splitting, and the Individual Defendants expressly object to this practice.  Claim splitting "prohibits a party from seeking to avoid the effects of *res judicata* by splitting a cause of action into separate grounds of recovery and then raising the separate grounds in successive lawsuits."  *Stratos Lightwave*, 2005 WL 681308, at *2 (quoting *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002)).

16

## CONCLUSION

For each of the foregoing reasons, the Individual Defendants respectfully request that this Court transfer this Action to the United States District Court for the Northern District of Texas or, in the alternative, stay this Action pending the resolution of the Texas Federal Consolidated Action.

Allen M. Terrell (#709)
*Terrell@rlf.com*
Harry Tashjian, IV (#4609)
*Tashjian@rlf.com*
RICHARDS, LAYTON AND FINGER, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899-0551
Tel: (302) 651-7700
Fax: (302) 651-7701
*Attorneys for Defendants Jeffrey A. Rich and Mark A. King*

OF COUNSEL:

William B. Dawson
Karen L. Hirschman
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel: (214) 220-7700
Fax: (214) 220-7716
*Counsel for Defendant Jeffrey A. Rich*

Karen Patton Seymour
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel: (212) 558-4000
Fax: (212) 558-3588
*Counsel for Defendant Mark A. King*

Dated: April 24, 2007

17

RLF1-3142871-1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2007, I caused the foregoing document to be electronically filed with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Theodore J. Tacconelli
FERRY, JOSEPH & PEARCE, P.A.
824 Market Street, Suite 904
Wilmington, DE 19899

Edward B. Micheletti
Nicole A. DiSalvo
SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP
One Rodney Square
Wilmington, DE 19801

Harry Tashjian, IV (#4609)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899-0551
(302) 651-7500
Tashjian@rlf.com

**TAB 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IKOS SYSTEMS, INC., et al ,    :
                               :
     Plaintiffs,               :
                               :
     v.                        : Civil Action No. 01-74-JJF
                               :
AXIS SYSTEMS, INC ,            :
                               :
     Defendant.                :

MEMORANDUM ORDER

Presently before the Court is Defendant's Motion to Transfer
Venue to the Northern District of California Pursuant to 28
U.S.C § 1404(a) (D.I. 14). For the reasons stated below, the
Court will grant Defendant's motion

BACKGROUND

Plaintiff IKOS Systems, Inc. ("IKOS") is a corporation
organized under the laws of the State of Delaware, with its
principal place of business in San Jose, California. (D.I. 6, ¶
1). Plaintiff Massachusetts Institute of Technology ("MIT") is a
corporation organized under the laws of the State of
Massachusetts, located in Cambridge, Massachusetts. (D.I. 6, ¶
2). Defendant Axis Systems, Inc. ("Axis") is a corporation
organized under the laws of the State of Delaware, with its
principal place of business in Sunnyvale, California. (D.I 12,
¶ 3).

On February 7, 2001, Plaintiffs filed suit against Defendant

in the District of Delaware alleging patent infringement. IKOS
and Axis compete in the field of electronic design automation
("EDA") technology used to design computer chips. MIT's
connection to this dispute is through the activities and
interests of IKOS, its exclusive licensee of two of the patents
at issue. Defendant moves pursuant to 28 U.S.C. § 1404(a) to
transfer the case to the Northern District of California.

DISCUSSION

Under 28 U.S.C. § 1404(a), "for the convenience of the
parties and witnesses, in the interest of justice, a district
court may transfer any civil action to any other district or
division where it might have been brought." 28 U.S.C. § 1404(a).
Because it is undisputed that Plaintiffs could have brought the
instant action in the Northern District of California, the
Court's only task is to determine whether the factors enumerated
in § 1404(a) warrant a transfer under the circumstances.

In determining whether or not to transfer venue under §
1404(a), a district court must consider a number of different
factors. These factors include several private interests: (1)
the convenience of the parties due to their relative physical and
financial conditions, (2) the convenience of the expected
witnesses, but only so far as the witnesses might be unavailable
for trial if the trial is conducted in a certain forum, and (3)
the location of books and records, to the extent that these books

and records could not be produced in a certain forum. Memminger

v. InfoCure Corp., C.A. No. 00-707-JJF, slip op. at 4 (D. Del.

Nov. 14, 2000)(citing Jumara v. State Farm Ins. Co., 55 F.3d 873,

879 (3d Cir. 1995)).[1]  These factors also include several public

interests:

> (1) the enforceability of the judgment, (2) practical
> considerations regarding the ease, speed, or expense of
> trial, (3) the administrative difficulty due to court
> congestion, (4) the local interest in deciding local
> controversies in the home forum, (5) the public
> policies of the two fora, and (6) the trial judge's
> familiarity with the applicable state law in diversity
> cases.

Id. (citing Jumara, 55 F.3d at 879-80). When determining whether

or not transfer is warranted under the circumstances, district

courts must balance all of the relevant factors. Jumara, 55 F.3d

at 883  The burden is upon the movant to establish that the

balance of the interests strongly weighs in favor of the

requested transfer, and a transfer will be denied if the factors

are evenly balanced or weigh only slightly in favor of the

transfer. See Continental Cas. Co. v. American Home Assurance

Co., 61 F.Supp. 2d 128, 131 (D. Del. 1999). Below, the Court

---

[1]  Jumara also listed the following private interests that
district courts should consider: (1) the plaintiff's choice of
forum, (2) the defendant's preferred forum, and (3) whether the
claim arose elsewhere. 55 F.3d at 879. Subsequent decisions of
this Court, however, have determined that these interests are
subsumed by the other Jumara factors. Memminger, slip op. at 5.
Therefore, to avoid considering the same interests twice, the
Court will not consider them separately. Id.

will analyze the factors relevant to the instant motion.

A.    Private Factors

The Court concludes that a balancing of the relevant private factors weighs strongly in favor of transfer in this case. Here, the Court finds the convenience of the parties and the convenience of the witnesses to be the most pertinent of the private factors. Although IKOS and Axis are both incorporated in Delaware, both maintain their principal places of business in Northern California. IKOS and Axis are located approximately twenty miles from each other in Santa Clara County, California, in the heart of the Silicon Valley. Thus, neither of the parties, their witnesses or any of the potentially relevant documents and records are located in Delaware.

Plaintiffs contend that their choice of forum is paramount. At the outset, the Court notes that the Plaintiffs' choice of forum is entitled to substantial deference and should not be lightly disturbed. Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970); see also Jumara, 55 F.3d at 879-80. However, in this case Plaintiffs' preference for Delaware is not given as much deference because most, if not all, of the events at issue occurred outside of Delaware. "[T]he transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred." Continental, 61 F.Supp. 2d

at 131.  Therefore, because the parties, witnesses and relevant documents and records are located outside of Delaware, the Court concludes that a balancing of the private factors strongly weighs in favor of transfer to the Northern District of California.

B.  Public Factors

The Court concludes that a balancing of the relevant public factors also strongly weighs in favor of transfer in this case. The Court finds the practical considerations and the local interest in deciding local controversies at home to be the most pertinent of the public factors.

The Court concludes that the practical considerations that will make the trial easier, more expeditious and less expensive strongly support transferring this case to the  Northern District of California.  The principal parties in this dispute, the key non-party witnesses and the relevant records and documents are all located in Northern California.

Further, many of the alleged underlying events which form the basis for this action occurred in the Northern District of California.  Conversely, the Court finds that Delaware does not have a strong interest in resolving this lawsuit because none of the events giving rise to this action occurred in Delaware and none of the parties maintain offices or engage in any engineering activities in Delaware.

Thus, upon a balancing of the private and public factors,

the Court concludes that this case should be transferred to the Northern District of California.

NOW THEREFORE, for the reasons discussed, IT IS HEREBY ORDERED that Defendant's Motion To Transfer Under 28 U.S.C. § 1404(a) (D.I. 14) is GRANTED, and this matter is transferred to the United States District Court for the Northern District of California.


September 18, 2001
DATE

_Joseph J. Farnan_
UNITED STATES DISTRICT JUDGE


CERTIFIED:        10/3/01
AS A TRUE COPY:
        ATTEST:
    PETER T. DALLEO, CLERK
BY _Deborah A. Starkman_